# EXHIBIT A



**ACE American Insurance Company**

**ACE Advantage® Miscellaneous Professional Liability Policy Declarations**

### This Policy is issued by the stock insurance company listed above.

**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.**

**THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.**

**TERMS THAT APPEAR IN BOLD FACE TYPE HAVE SPECIAL MEANING. PLEASE REFER TO SECTION II, DEFINITIONS.**

| | |
|---|---|
| **Policy No.** EON G27556346 005 | |
| Item 1. **Named Insured** Principal Address: | Chemonics International, Inc. 1717 H St NW Ste 1 Washington, DC 20006 |
| Item 2. **Policy Period**: | From 12:01 a.m. 04/15/2019 To 12:01 a.m. 04/15/2020 (Local time at the address shown in Item 1) |
| Item 3. Limit of Liability (including **Claims Expenses**) | $10,000,000 Each **Claim** $10,000,000 Aggregate Limit $5,000.00 **Disciplinary Proceeding Claims Expenses** Aggregate Limit (in addition to the Each **Claim** and Aggregate Limits set forth above) |
| Item 4. Retention | $250,000 Each **Claim** |
| Item 5. Premium: $85,184 | |
| Item 6. **Retroactive Date** (if applicable): 03/23/1999 | |
| Item 7. **Professional Services**: In the performance of management, operations, marketing, logistics consulting, technical assistance, research, training, special expertise in communications, grants management procurement, performance monitoring and related services for others for compensation. | |

Item 8.    Notice to **Company**:

    A.    Notice of **Claim** or **Wrongful Act**:

        Chubb Financial Lines
        P.O. Box 5105
        Scranton, PA 18505-0518

    B.    All other notices:

        Chief Underwriting Officer
        Chubb - Financial Lines
        1133 Avenue of the Americas, 32nd Floor
        New York, NY 10036

Item 9.    Optional **Extended Reporting Period**:
    Additional Premium:   100% of current annual premium
    Additional Period:  12 months

Item 10.    Endorsements attached upon **Policy** effective date:

| | |
|---|---|
| Signature Endorsement | CC-1K11i (02/18) |
| Notice Amended Endorsement | PF-33468 (02/11) |
| Trade or Economic Sanctions Endorsement | PF-46422 (07/15) |
| Network Security or Privacy Liability Exclusion | PF-23294c (03/10) |
| Multimedia Endorsement | PF-19200 (12/05) |
| Notice Amended | PF-19252 (12/05) |
| Territory Amended | PF-19272 (12/05) |
| Fungi Exclusion | PF-19830 (02/06) |
| Defense and Settlement Endorsement | PF-38970 (08/12) |
| MPL Enhancement Endorsement | PF-45313 (04/15) |
| Management Consultants Endorsement | PF-19932 (02/06) |
| Additional Insured | PF-19806 (02/06) |
| Tie - In - of Limits | |
| Amendatory Endorsement- District of Columbia | PF-23128 (03/07) |
| CHUBB Producer Compensation Practices & Policies | PF-19684 (10/16) |
| U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") | ALL-20887a (03/16) |
| | PF-17914a (04/16) |

IN WITNESS WHEREOF, the **Company** has caused this **Policy** to be countersigned by a duly authorized representative of the **Company**.



JOHN J. LUPICA, President
Authorized Representative

DATE: <u>05/13/2019</u>



**ACE American Insurance Company**

**ACE Advantage®**
**Miscellaneous Professional Liability**
**Policy**

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insureds** and the **Company** agree as follows:

I.    INSURING AGREEMENT AND DEFENSE

A.  Insuring Agreement

The **Company** will pay on behalf of the **Insured** all sums in excess of the Retention that the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** because of a **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period** by reason of a **Wrongful Act** committed on or subsequent to the **Retroactive Date** and before the end of the **Policy Period**.

B.  Defense

1.  The **Company** shall have the right and duty to defend any covered **Claim** brought against the **Insured** even if the **Claim** is groundless, false or fraudulent.  The **Insured** shall not admit or assume liability or settle or negotiate to settle any **Claim** or incur any **Claims Expenses** without the prior written consent of the **Company** and the **Company** shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary.

2.  The **Company's** duty to defend ends if the **Insured** refuses to consent to a settlement acceptable to the claimant/plaintiff and the **Company**.  In such event, the **Company** shall tender a check to the **Insured** for the recommended settlement amount, and shall be relieved of any further duty or obligation, other than for covered **Claims Expenses** incurred until the date of such refusal.  The **Insured** thereafter has the duty to defend at its own expense.  This paragraph shall not apply to a settlement in which the total incurred **Damages** and **Claims Expenses** do not exceed the Retention.

3.  The **Company** shall not be obligated to commence or continue to investigate, defend, pay or settle any **Claim** after the applicable Limit of Liability specified in Item 3 of the Declarations has been exhausted, or after the **Company** has deposited the remaining available Limit of Liability with a court of competent jurisdiction.  In such case, the **Company** shall withdraw from investigation, defense, payment or settlement of such **Claim** and shall tender control of such **Claim** to the **Insured**.

4.  If the **Insureds** attend hearings, depositions or trials at the request of the **Company**, the **Company** shall reimburse the **Insureds** for actual loss of earnings and reasonable and necessary expenses due to such attendance, up to $250.00 per day and a maximum amount of $5,000 for all **Claims** covered by this **Policy**.  Such reimbursement payments by the **Company** to the **Insured** are not subject to the Retention and shall not reduce the Limits of Liability.

II.    DEFINITIONS

A.  **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Company** in connection with the **Company** underwriting this **Policy** or any policy of which this **Policy** is a direct or indirect renewal

or replacement or which it succeeds in time. All such applications, attachments, information, and materials are deemed attached to and incorporated into this **Policy**.

B. **Bodily Injury** means injury to the body, sickness, or disease, and death. **Bodily Injury** also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person.

C. **Claim** means:
   1. a written demand against any **Insured** for monetary or non-monetary damages;
   2. a civil proceeding against any **Insured** for monetary damages, non-monetary damages or injunctive relief, commenced by the service of a complaint or similar pleading;
   3. an arbitration proceeding against any **Insured** for monetary damages, non-monetary damages or injunctive relief;
   4. a civil, administrative or regulatory investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document;
   5. a **Disciplinary Proceeding**;
   including any appeal therefrom.

D. **Claims Expenses** means:
   1. reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the **Company**, or by the **Insured** with the **Company's** prior written consent, in the investigation and defense of covered **Claims**; and
   2. premiums for any appeal bond, attachment bond or similar bond, provided the **Company** shall have no obligation to apply for or furnish such bond.
   **Claims Expenses** shall not include wages, salaries, fees or costs of directors, officers or employees of the **Company** or the **Insured**.

E. **Company** means the insurance company providing this insurance.

F. **Damages** means any compensatory amount which the **Insured** becomes legally obligated to pay on account of a covered **Claim**, including judgments, any award of prejudgment and post-judgment interest on that part of any judgment paid under this **Policy**, awards and settlements. **Damages** shall not include:
   1. any amount for which the **Insured** is not financially liable or legally obligated to pay;
   2. taxes, fines or penalties;
   3. matters uninsurable under the law pursuant to which this **Policy** is construed;
   4. disgorgement of profits by an **Insured**; cost of an **Insured's** correction; fees, commissions, expense or costs paid to or charged by an **Insured**;
   5. the cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief; or
   6. any amount relating to a **Disciplinary Proceeding**, other than **Claims Expenses**.

   **Damages** includes punitive and exemplary damages and the multiplied portion of any multiple damage award, to the extent such damages are insurable under the internal laws of any jurisdiction which has a substantial relationship to the **Insured**, the **Company**, this **Policy** or such **Claim**.

G. **Disciplinary Proceeding** means any proceeding by a regulatory or disciplinary official, board or agency to investigate charges of professional misconduct by an **Insured** in the performance of **Professional Services**.

H. **Extended Reporting Period** means the period for the extension of coverage, if elected, described in Section IV, **Extended Reporting Period**.

I. **Insured** means:

   1. the **Named Insured**;
   2. any **Subsidiary**, but only with respect to **Wrongful Acts** which occur while it is a **Subsidiary**;
   3. any past or present principal, partner, officer, director, trustee or employee of the **Named Insured** or **Subsidiary** thereof (and if the **Named Insured** is a partnership, limited liability

partnership or limited liability company, then any general or managing partner or principal thereof), but only with respect to **Professional Services** performed on behalf of the **Named Insured** or any **Subsidiary**;

4. the estate, heirs, executors, administrators or legal representatives of any **Insured** described in paragraph 3 above in the event of such **Insured's** death, incapacity, insolvency, or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this **Policy**; and

5. independent contractors who are natural persons, but only with respect to **Professional Services** performed on behalf of the **Named Insured** or **Subsidiary** thereof.

J. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

K. **Named Insured** means the entity or person specified in Item 1 of the Declarations.

L. **Personal Injury Offense** means one or more of the following offenses:
1. false arrest, detention or imprisonment;
2. malicious prosecution;
3. defamation, including libel and slander, and disparagement;
4. publication or an utterance in violation of an individual's right to privacy; and
5. invasion of the right to private occupancy, including wrongful entry or eviction.

M. **Policy** means collectively, the Declarations, the **Application**, this policy form and any endorsements.

N. **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section VI.E, Termination of the Policy.

O. **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county or municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, or noise.

P. **Professional Services** means only those services specified in Item 7 of the Declarations performed for others by an **Insured** or by any other person or entity for whom the **Insured** is legally liable.

Q. **Property Damage** means:
1. physical injury to, or loss or destruction of, tangible property, including the loss of use thereof; and
2. loss of use of tangible property which has not been physically injured, lost, damaged or destroyed.

R. **Retroactive Date** means the date specified in Item 6 of the Declarations.

S. **Subsidiary** means any entity, other than a joint venture, in which the **Named Insured:**

1. owns interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of the board of directors if such entity is a corporation, the management committee members if such entity is a partnership, the members of the management board if such entity is a limited liability company; or

2. has the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Named Insured** or any **Subsidiary**, to elect, appoint or designate a majority of the board of directors if such entity is a corporation, the management

committee members if such entity is a partnership, the members of the management board if such entity is a limited liability company,

on or before the inception date of the **Policy**, either directly or indirectly, in any combination, by one or more other **Subsidiaries**.

T. **Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading statement or **Personal Injury Offense** committed by the **Insured** or by any other person or entity for whom the **Insured** is legally liable in the performance of or failure to perform **Professional Services**.

U. **Wrongful Employment Practices** means any actual or alleged:
1. wrongful dismissal or discharge or termination of employment, whether actual or constructive;
2. employment-related misrepresentation;
3. violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;
4. sexual harassment or other unlawful workplace harassment;
5. wrongful deprivation of a career opportunity or failure to employ or promote;
6. wrongful discipline of employees;
7. retaliation against employees for the exercise of any legally protected right or for engaging in any legally protected activity;
8. negligent evaluation of employees;
9. failure to adopt adequate workplace or employment policies and procedures;
10. employment-related libel, slander, defamation, or invasion of privacy;
11. employment-related wrongful infliction of emotional distress;
12. any actual or alleged discrimination, sexual harassment, or violation of a natural person's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.


III. EXCLUSIONS

The **Company** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim**:

A. alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission, or any intentional or knowing violation of the law by an **Insured**, however, this exclusion shall not apply to **Claims Expenses** or the **Company's** duty to defend any such **Claim** unless and until there is an adverse admission by, finding of fact, or final adjudication against any **Insured** as to such conduct, at which time the **Insured** shall reimburse the **Company** for all **Claims Expenses** incurred;

B. alleging, based upon, arising out of, or attributable to any **Bodily Injury** or **Property Damage**;

C. alleging, based upon, arising out of, or attributable to any liability of others assumed by the **Insured** under any express, implied, actual or constructive contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

D. alleging, based upon, arising out of, or attributable to **Professional Services** performed for any entity if at the time the **Professional Services** were performed:
1. any **Insured**, or any other natural person or entity for whom or which an **Insured** is legally liable, was a partner, director, officer or employee of such entity;
2. any **Insured**, or any other natural person or entity for whom or which an **Insured** is legally liable, owned, directly or indirectly, 10% or more of any such entity if it was a publicly held company, or 30% or more of any such entity if it was a privately held or not-for-profit company;

E. brought or maintained by, on behalf of, or in the right of any **Insured**;

F. alleging, based upon, arising out of or attributable to any **Wrongful Employment Practice**;

G.    alleging, based upon, arising out of, or attributable to any discrimination on any basis, including, but not limited to, race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

H.    alleging, based upon, arising out of or attributable to any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

I.    alleging, based upon, arising out or attributable to any violation of:
      1.    the Employee Retirement Income Security Act of 1974;
      2.    the Securities Act of 1933, the Securities Exchange Act of 1934;
      3.    the Racketeering Influenced and Corrupt Organizations Act of 1970;
      and any rules or regulations promulgated thereunder, amendments thereof, or any similar federal, state or common law;

J.    alleging, based upon, arising out of, or attributable to the gaining in fact of any profit or advantage to which the **Insured** is not legally entitled;

K.    alleging, based upon, arising out of, or attributable to any **Wrongful Act**  committed prior to the beginning of the **Policy Period**, if, on or before the earlier of the effective date of this **Policy** or the effective date of any **Policy** issued by the **Company** to which this **Policy** is a continuous renewal or replacement, the **Insured** knew or reasonably could have foreseen that such **Wrongful Act** would result in a **Claim**;

L.    alleging, based upon, arising out of, or attributable to:
      1.    any **Wrongful Act,** fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or
      2.    any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**;

M.    alleging, based upon, arising out of, or attributable to:
      1.    the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

      2.    any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

N.    alleging, based upon, arising out of, or attributable to any validity, invalidity, infringement, violation or misappropriation of any patent, copyright, service mark, trademark, trade name, trade secret or any other intellectual property right;

IV.    **EXTENDED REPORTING PERIOD**

If the **Company** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Named Insured** terminates or does not renew this **Policy** and does not obtain replacement coverage as of the effective date of such termination or nonrenewal, the **Named Insured** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this **Policy** for at least one **Extended Reporting Period** as follows:

A.    Automatic **Extended Reporting Period**

      The **Named Insured** shall have continued coverage granted by this **Policy** for a period of 60 days following  the effective date  of such termination or nonrenewal, but only for  **Claims**  first made

during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. This Automatic **Extended Reporting Period** shall immediately

expire upon the purchase of replacement coverage by the **Named Insured**.

B. Optional **Extended Reporting Period**

1. The **Named Insured** shall have the right, upon payment of the additional premium set forth in Item 9 of the Declarations, to an Optional **Extended Reporting Period**, for the period set forth in Item 9 of the Declarations following the effective date of such termination or nonrenewal, but only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

2. This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Company**, and the **Company** receives payment of the additional premium, within 60 days following the effective date of termination or nonrenewal.

3. The 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

C. The **Company** shall give the **Named Insured** notice of the premium due for the Optional **Extended Reporting Period** as soon as practicable following the date the **Named Insured** gives such notice of such election, and such premium shall be paid by the **Named Insured** to the **Company** within 10 days following the date of such notice by the **Company** of the premium due. The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

D. The Automatic and Optional **Extended Reporting Periods** shall be part of and not in addition to the Limit of Liability for the immediately preceding **Policy Period**.  The Automatic and Optional **Extended Reporting Periods** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Company** for the **Policy Period** and the Automatic and Optional **Extended Reporting Period**, combined.

E. A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**

V.   LIMITS OF LIABILITY AND RETENTION

A. Limits

1. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Damages** and all **Claims Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claims Expense**.

2. The Each Claim Limit stated in Item 3 of the Declarations shall be the **Company's** maximum aggregate liability for the sum of all **Damages** and **Claims Expenses** because of each **Claim**, including each **Claim** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

3. The Aggregate Limit stated in Item 3 of the Declarations shall be the maximum aggregate liability of the **Company** for all **Damages** and **Claims Expenses** because of all **Claims**, including all **Claims** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

4. The **Disciplinary Proceeding Claims Expenses** Aggregate Limit stated in Item 3 of the Declarations shall be the maximum aggregate liability of the **Company** for **Claims Expenses** for **Disciplinary Proceedings** for each **Policy Period** regardless of the number of

**Disciplinary Proceedings** or **Insureds**.  This limit is in addition to and is not part of the Each **Claim** Limit or the Aggregate Limit otherwise stated in Item 3 of the Declarations.

5.  **Claims Expenses** shall be part of and not in addition to the Aggregate Limit of Liability shown in Item 3 of the Declarations, and shall reduce such Aggregate Limit of Liability.

6.  If the Limit of Liability is exhausted by payment of **Damages** or **Claims Expenses**, the obligations of the **Company** under this **Policy** shall be completely fulfilled and extinguished.

B.  Retention

1.  The liability of the **Company** shall apply only to that part of **Damages** and **Claims Expenses** which are excess of the Retention amount shown in Item 4 of the Declarations.  Such Retention shall be borne uninsured by the **Insureds** and at their own risk.  However, the Retention shall not apply to **Claims Expenses** in a **Disciplinary Proceeding**.

2.  A single Retention amount shall apply to **Damages** and **Claims Expenses** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

VI.  CONDITIONS

A.  Notice:

1.  The **Insured** shall, as a condition precedent to their rights under this **Policy**, give to the **Company** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after: (i) the end of the **Policy Period**, or (ii) with respect to **Claims** first made during any applicable Automatic or Optional **Extended Reporting Period**, the end of such Automatic or Optional **Extended Reporting Period**.

2.  If, during the **Policy Period**, any **Insured** becomes aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds** give written notice to the **Company** during the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period** of:

a.  the identity of the potential claimants;

b.  a description of the anticipated **Wrongful Act** allegations;

c.  the identity of the **Insureds** allegedly involved;

d.  the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

e.  the consequences which have resulted or may result; and

f.  the potential monetary damages;

then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Company**.  No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3.  All notices under any provision of this **Policy** shall be in writing and given by prepaid express courier, certified mail or facsimile transmission properly addressed to the appropriate party.  Notice to the **Insureds** may be given to the **Named Insured** at the address shown in Item 1 of the Declarations.  Notice to the **Company** of any **Claim** or **Wrongful Act** shall be given to the **Company** at the address set forth in Item 8A of the Declarations.  All other notices to the **Company** under this **Policy** shall be given to the **Company** at the address set forth in Item 8B of the Declarations.  Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee, or one day following the date such notice is sent, whichever is earlier.

B.  Assistance and Cooperation

The **Insured** shall cooperate with the **Company**, and provide to the **Company** all information and assistance which the **Company** reasonably requests including without limitation attending hearings, depositions and trials and assisting in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any **Claim** covered by this **Policy**. The **Insured** shall immediately forward to the **Company** at the address indicated in Item 8A of the Declarations every demand, notice, summons, or other process or pleadings received by the **Insured** or its representatives. The **Insured** shall do nothing that may prejudice the **Company's** position.

C.  Other Insurance

If any **Damages** or **Claims Expenses** covered under this **Policy** are covered under any other valid and collectible insurance, then this **Policy** shall cover such **Damages** or **Claims Expenses**, subject to its terms and conditions, only to the extent that the amount of such **Damages** or **Claims Expenses** are in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**.

D.  Representations

1.  The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and accurate and:
    a.  are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**; and
    b.  shall be deemed material to the acceptance of this risk or the hazard assumed by the **Company** under this **Policy**.
    It is understood and agreed that this **Policy** is issued in reliance upon the truth and accuracy of such representations.

2.  In the event the **Application,** including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or hazard assumed by the **Company** under this **Policy**, this **Policy** shall be void ab initio.

E.  Termination

1.  This **Policy** shall terminate at the earliest of the following times:
    a.  the effective date of termination specified in a prior written notice by the **Named Insured** to the **Company**;
    b.  60 days after receipt by the **Named Insured** of a written notice of termination from the **Company**;
    c.  10 days after receipt by the **Named Insured** of a written notice of termination from the **Company** for failure to pay a premium when due, unless the premium is paid within such 10 day period;
    d.  upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations; or
    e.  at such other time as may be agreed upon by the **Company** and the **Named Insured**.

2.  If the **Policy** is terminated by the **Named Insured**, the **Company** shall refund the unearned premium computed at the customary short rate. If the **Policy** is terminated by the **Company**, the **Company** shall refund the unearned premium computed *pro rata*. Payment or tender of any unearned premium by the **Company** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

F.  Territory And Valuation

1.  Coverage under this **Policy** shall extend to **Wrongful Acts** taking place anywhere in the world, provided that the **Claim** is made within the jurisdiction, and subject to the substantive laws of

the United States of America, Canada, or their territories or possessions.

2. All premiums, limits, retentions, **Damages** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated, or another element of **Damages** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon, or the other element of **Damages** is due, respectively or if not published on such date, the next date of publication of *The Wall Street Journal*.

G. Subrogation

In the event of any payment under this **Policy**, the **Company** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

H. Action Against the **Company** and Bankruptcy

No action shall lie against the **Company**. No person or organization shall have any right under this **Policy** to join the **Company** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Company** be impleaded by any **Insured** or its legal representatives. Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this **Policy**.

I. Authorization

By acceptance of this **Policy**, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving of notice of **Claim**, the giving or receiving of notice of termination or non renewal, the payment of premiums, the receiving of any premiums that may become due under this **Policy**, the agreement to and acceptance of endorsements, consenting to any settlement, exercising the right to the **Extended Reporting Period**, and the giving or receiving of any other notice provided for in this **Policy**, and all **Insureds** agree that the **Named Insured** shall so act on their behalf.

J. Alteration, Assignment and Headings

1. Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part of this **Policy** nor prevent the **Company** from asserting any right under the terms of this **Policy**.

2. No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Company**.

3. The titles and headings to the various parts, sections, subsections and endorsements of the **Policy** are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

K. Interpretation

The terms and conditions of this **Policy** shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this **Policy** is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions of this **Policy,** without regard to the authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either any **Insured** or the **Company** and without reference to the reasonable expectations of either the **Insured** or the **Company.**

VII.  MATERIAL CHANGES IN CONDITIONS

A.  Acquisition or Creation of Another Organization

If, during the **Policy Period**, the **Named Insured**:

1.  acquires voting securities in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

2.  acquires any organization by merger into or consolidation with the **Named Insured**;

then, subject to the terms and conditions of this **Policy**, such organization shall be covered under this **Policy** but only with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Company** agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition or creation.

If the total revenue of such acquired organization, as reflected in the then most recent consolidated financial statements of the organization, exceeds 10% of the total revenue of the **Named Insured** and the **Subsidiaries** as reflected in the then most recent consolidated financial statements of the **Named Insured**, the **Named Insured**, as a condition precedent to coverage with respect to such **Insureds**, shall, no later than 60 days after the effective date of such acquisition or creation:

a.  give written notice of such acquisition or creation to the **Company**;
b.  pay any additional premium required by the **Company**; and
c.  agree to any additional terms and conditions of this **Policy** as required by the **Company**.

B.  Acquisition of the **Named Insured**

If, during the **Policy Period**, any of the following events occurs:

1.  the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or
2.  the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of i) the directors of the **Named Insured** if a Corporation; ii) the management committee members of the **Named Insured** if a partnership; iii) the management board of the **Named Insured** if a limited liability company;

then coverage under this **Policy** will continue in full force and effect until termination of this **Policy**, but only with respect to **Claims** for **Wrongful Acts** taking place before such event. Coverage under this **Policy** will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.

C.  Termination of a **Subsidiary**

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to the **Subsidiary** and its **Insureds** shall continue until termination of this **Policy**. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**.



# SIGNATURES

| Named Insured **Chemonics International, Inc.** | | | Endorsement Number **1** |
|---|---|---|---|
| Policy Symbol **EON** | Policy Number **G27556346 005** | Policy Period **04/15/2019 to 04/15/2020** | Effective Date of Endorsement **04/15/2019** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

THE ONLY COMPANY APPLICABLE TO THIS POLICY IS THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary                    JOHN J. LUPICA, President

CC-1K11i (02/18)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**2** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

**Notice Amended**

It is agreed that the Notice section of the **Policy** is amended by adding the following:

Notwithstanding anything in this section to the contrary, written **Claim** notices may also be transmitted via email to the following address:

ChubbClaimsFirstNotice@chubb.com

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Chemonics International, Inc.** | | | **3** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G27556346 005** | **04/15/2019 to 04/15/2020** | **04/15/2019** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or similar laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**4** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## Network Security or Privacy Liability Exclusion

1.  Section II, Definitions, is amended by adding the following:

- **Network Security or Privacy Breach** means:

    1.  the failure by the **Insured** to properly handle, manage, store, destroy or otherwise control confidential corporate or personally identifiable information;

    2.  any violation of the **Insured's** privacy policy, or any violation by the **Insured** of:

        (a)  the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

        (b)  the Gramm-Leach-Bliley Act of 1999;

        (c)  the California Security Breach Notification Act (CA SB 1386);

        (d)  Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce;

        (e)  the Drivers Privacy Protection Act ("DPPA") 18 U.S.C. § 2721, et. seq., or

        (f)  any violation of any other similar state, federal, and foreign identity theft and privacy protection legislation that requires commercial entities that collect personal information to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that personal information has potentially been compromised; or

    3.  a failure in network security, including but not limited to activities performed by the **Insured** to protect against unauthorized access to, unauthorized use of, a denial of service attack directed against, or transmission of malicious code to the **Insured's** computer system.

2.  Section III, Exclusions, is amended by adding the following:

- alleging, based upon, arising out or attributable to a **Network Security or Privacy Breach**.

All other terms and conditions of this **Policy** remain unchanged.

_____<br>Authorized Representative

PF-23294c (03/10)                                                                                                                    Page 1 of 1

EO

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**5** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## Multimedia Endorsement

It is agreed that:

1. Section I, Insuring Agreement And Defense, subsection A, Insuring Agreement, is deleted in its entirety and the following is inserted:

   A. The **Company** will pay on behalf of the **Insured** all sums in excess of the Retention that the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses**, including those **Assumed Under Contract**, because of a **Claim** first made against the **Insured** during the **Policy Period** by reason of a **Wrongful Act** in the performance of or failure to perform **Professional Services** by the **Insured** or by any other person or entity for whom the **Insured** is legally liable.  The **Wrongful Acts** must have been committed on or subsequent to the **Retroactive Date** specified in Item 6. of the Declarations and before the end of the **Policy Period**.

2. Section II, Definitions, is amended as follows:

   a. The following definitions are added:

   - **Advertising** means any publicity or promotion including branding, co-branding, sponsorships and/or endorsements on the **Insured's** own behalf or for others; however, **Advertising** shall not mean publicity or promotion of lotteries, sweepstakes, contests, or games of chance, including over-redemption relating therefrom.  **Advertising** shall also not mean merchandising.

   - **Assumed Under Contract** means liability assumed by the **Named Insured** pursuant to hold harmless or indemnity agreements executed by the **Named Insured** with any third party, but only with respect to **Matter** provided or disseminated by the **Named Insured**, or with the **Named Insured's** permission, and where the third party is not owned by the **Named Insured**, the parent of the **Named Insured**, or any affiliate of the **Named Insured**.

   - **Broadcasting** includes television broadcasting, motion picture broadcasting, cable and satellite television broadcasting and radio broadcasting.

   - **Internet Media** means **Advertising**, web-casting, electronic transmission, retransmission, utterance, dissemination, distribution, serialization, creation, origination, exhibition, displaying of the **Insured's Matter** over the internet, intranet, virtual private network, or extranet.

   - **Matter** means any communication, regardless of its nature or form, including advertising, art, creative expression, data, entertainment, film, facts, fiction, graphics, literary composition, music, news, photographs, pictures, opinions, sound recordings and video, and the use of such **Matter** by others with permission of the **Insured.**

   - **Media Injury** shall be defined as follows:

     a. infringement of copyright, plagiarism, piracy or misappropriation of ideas;

     b. infringement of title, slogan, trademark, trade name, trade dress, service mark or service name;

     c. breach of any express or implied contract arising out of the actual or alleged submission of any material, idea or process, including any newsworthy, literary, dramatic, musical, audio visual, visual or other similar or analogous material or process used by the **Insured** or others;

    d.  false arrest, detention or imprisonment, or malicious prosecution;

    e.  libel, slander or other defamation, and unfair competition related thereto;

    f.  publication or an utterance in violation of an individual's right to privacy, and

    g.  wrongful entry or eviction, trespass or other invasion of the right to private occupancy;

- **Media Services** means **Advertising, Broadcasting, Publishing** and **Internet Media**.
- **Publishing** means researching, preparation, publication, republication, serialization, exhibition or distribution of **Matter**.

b.  Subsection C, the definition of **Claim**, is deleted in its entirety and the following is inserted:

    C.  **Claim** means a written demand for money, including any civil proceeding against the **Insured** for a **Wrongful Act**, in the performance of or failure to perform **Professional Services**. **Claim** also means a written demand seeking monetary or injunctive relief for a **Media Injury** arising from a **Wrongful Act** in the performance of or failure to perform **Media Services**. **Claim** shall not include any **Disciplinary Proceeding**.

c.  Subsection F, the definition of **Damages**, is deleted in its entirety and the following is inserted:

    F.  **Damages** means any compensatory amount which the **Insured** becomes legally obligated to pay on account of a covered **Claim**, including judgments, awards, settlements, punitive damages, exemplary damages and the multiplied portion of multiplied damages where permitted by law. All settlements must be negotiated and agreed upon with the prior written consent of the **Company**.

    Solely with respect to **Claims** for breach of an express or implied contract arising out of the actual or alleged submission of any material, idea or process as defined under paragraph C of the definition of **Media Injury**, **Damages** also means emotional distress or breach of trust or confidence arising out of such submission.

    **Damages** shall not include:

    a.  civil or criminal fines, penalties, or sanctions, whether pursuant to law, statute, regulation or court rule;

    b.  any matter, sum or award that is uninsurable under the law pursuant to which this Policy shall be construed; and

    c.  lost profits, disgorgement of profits, royalties, commissions, cost of recall, reproduction costs, cost of correction, and charges for goods or services.

d.  Subsection P, the definition of **Professional Services**, is deleted in its entirety and the following is inserted:

    P.  **Professional Services** means only those services specified in Item 7. of the

    Declarations and performed for others for a fee by an **Insured** or by any person or entity for whom the **Insured** is legally liable. **Professional Services** also means **Media Services** performed by an **Insured** or by any person or entity for whom the **Insured** is legally liable.

e.  Subsection T, the definition of **Wrongful Act**, is deleted in its entirety and the following is inserted:

    T.  **Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading statement, **Personal Injury**, **Media Injury**, neglect or breach of duty by the **Insured** in their capacity as such or by any other person or entity for whom the **Insured** is legally liable.

3.  Section III, Exclusions, is amended as follows:

    a.  The following exclusions are added:

- alleging, based upon, arising out of, or attributable to any actual or alleged infringement of patent or misappropriation of a trade secret;

- alleging, based upon, arising out of, or attributable to any actual or alleged mechanical or electrical failure, breakdown, malfunction or defect of any hardware, equipment or component, however, this exclusion shall not apply to **Claims** or **Claims Expenses** when the failure, breakdown, malfunction or defect is solely the result of the **Insured's Wrongful Act**;

- alleging, based upon, arising out of, or attributable to any actual or alleged change in electric power supply, including but not limited to power interruption or surge, brownout, blackout, short circuit, over voltage, induction or power fluctuation;

- alleging, based upon, arising out of, or attributable to any actual or alleged breach of security, unauthorized access or use of or tampering with data or systems by any person;

- alleging, based upon, arising out of, or attributable to any actual or alleged transfer of electronic funds over the Internet or through a system or network of two or more computers;

- alleging, based upon, arising out of, or attributable to any claims, proceedings, or actions brought by, or orders imposed by or from, any of the following:

    a.  ASCAP, SESAC, BMI or other music licensing organizations;

    b.  Federal Trade Commission;

    c.  Federal Communication Commission; or,

    d.  any other federal, state, or local government agency;

    provided, however, this exclusion shall not apply to any **Claim** for a **Wrongful Act** in the rendering of **Professional Services** to any entity referenced in a through d referenced directly above in this exclusion;

- alleging, based upon, arising out of, or attributable to the colorization of any "black and white" film product;

- alleging, based upon, arising out of, or attributable to any copyright, service mark or trademark infringement of software or software technology;

- alleging, based upon, arising out of, or attributable to unfair competition in the course of **Advertising** the **Insured's** own products or services.

    b.  Exclusion C is deleted in its entirety and the following is inserted:

    C.  alleging, based upon, arising out of, or attributable to liability assumed by the **Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract, or unless such liability is **Assumed Under Contract**.

    c.  Exclusion N is deleted in its entirety.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**6** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## Notice Amended (Variable Number of Days)

It is agreed that Section VI, Conditions, subsection A, Notice is amended by deleting the phrase "30 days" and inserting the phrase "90 days".

All other terms and conditions of this **Policy** remain unchanged.

Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**7** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Territory Amended (Worldwide Coverage)

It is agreed that Section VI, Conditions, subsection F, Territory And Valuation, numbered paragraph 1, is deleted in its entirety and the following is inserted:

1. Coverage under this **Policy** shall extend to **Wrongful Acts** taking place and **Claims** made anywhere in the world.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Chemonics International, Inc.** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G27556346 005** | **04/15/2019 to 04/15/2020** | **04/15/2019** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

### Fungi Exclusion

It is agreed that:

1.  Section III, Exclusions, is amended by adding the following additional exclusion:

    - alleging, based upon, arising out of, or attributable to **Fungi**;

2.  Section II, Definitions, is amended by adding the following additional definition:

    - **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by such fungus, including mold or mildew, but does not include any fungus intended by the **Insured** for consumption.

All other terms and conditions of this **Policy** remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | Endorsement Number |
|---|---|
| **Chemonics International, Inc.** | **9** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **EON** | **G27556346 005** | **04/15/2019  to 04/15/2020** | **04/15/2019** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE American Insurance Company** |

### Defense and Settlement Amended – Variable Percentages

It is agreed that Section I, Insuring Agreement and Defense, subsection B, Defense is amended by deleting numbered paragraph 2 in its entirety and inserting the following:

2.  If the **Insured** refuses to consent to a settlement or a compromise acceptable to the claimant/plaintiff and the **Company**, then the **Company's** liability to pay **Damages** and **Claims Expenses** under this **Policy** with respect to such **Claim** shall be reduced to (i) the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred until the date of such refusal, and (ii) 80% of all subsequent covered **Claims Expenses** in excess of such amount, which sum shall not exceed the unexhausted Limit of Liability specified in Item 3 of the Declarations.  The remaining 20% of **Claims Expenses** and all subsequent **Damages** shall be borne by the **Insureds** uninsured and at their own risk.  In such event, the **Company** shall tender a check to the **Insured** for the recommended settlement amount, and shall be relieved of any further duty or obligation, other than for covered **Claims Expenses** referenced above.  This paragraph shall not apply to a settlement in which the total incurred **Damages** and **Claims Expenses** do not exceed the Retention.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**10** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Miscellaneous Professional Liability Enhancement Endorsement

It is agreed that in consideration of the premium paid, the **Policy** is amended as follows:

1.  Section I, Insuring Agreement and Defense, subsection B, Defense is amended by deleting numbered paragraph 2 in its entirety and inserting the following:

    2.  If the **Insured** refuses to consent to a settlement or a compromise acceptable to the claimant/plaintiff and the **Company**, then the **Company's** liability to pay **Damages** and **Claims Expenses** under this **Policy** with respect to such **Claim** shall be reduced to (i) the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred until the date of such refusal, and (ii) 50% of all subsequent covered **Claims Expenses** in excess of such amount, which sum shall not exceed the unexhausted Limit of Liability specified in Item 3 of the Declarations.  The remaining 50% of **Claims Expenses** and all subsequent **Damages** shall be borne by the **Insureds** uninsured and at their own risk. In such event, the **Company** shall tender a check to the **Insured** for the recommended settlement amount, and shall be relieved of any further duty or obligation, other than for covered **Claims Expenses** referenced above.  This paragraph shall not apply to a settlement in which the total incurred **Damages** and **Claims Expenses** do not exceed the Retention.

2.  Section II, Definitions, is amended as follows:

    a.  Subsection C, the definition of **Claim** is amended by adding the following:

        **Claim** also means a written request of the **Insured** to toll or waive a statute of limitations applicable to a **Claim** as otherwise described in this definition.

    b.  Subsection F, the definition of **Damages** is amended by deleting the last paragraph and inserting the following:

        **Damages** includes punitive and exemplary damages and the multiplied portion of any multiple damage award to the extent such damages are insurable under the internal laws of the applicable jurisdiction that most favors coverage for such damages.

    c.  Subsection I, the definition of **Insured** is amended by adding the following:

        **Insured** also means any leased, part time, or seasonal employees who are natural persons, but only with respect to **Professional Services** performed on behalf of the **Named Insured** or a **Subsidiary** thereof;

3.  Section III, Exclusions, is amended as follows:

    a.  Subsection A, is deleted in its entirety and the following is inserted:

        A.  alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission, or any intentional or knowing violation of the law by an **Insured**, however, this exclusion shall not apply unless and until there is an adverse admission by or final adjudication against any **Insured** as to such conduct, at which time the **Insured** shall reimburse the **Company** for all **Damages** and **Claims Expenses** paid or incurred on account of such **Claim**.  This exclusion shall apply to any **Insured** who had knowledge of or participated in the aforementioned conduct. For purposes of this exclusion, only the knowledge of the **Named Insured's** and any **Subsidiary's** Chief Executive Officer, Chief Financial Officer, President, Chairman of the Board, General Counsel, and Risk Manager (or  the functional equivalent of such positions)  shall be imputed to the **Named Insured**

and any **Subsidiary**. Further, the knowledge of any other **Insured**, other than the aforementioned individuals, shall not be imputed to any other **Insured**, and the knowledge of an **Insured Person** shall not be imputed to any other **Insured Person**.

    b.  Subsection K is deleted in its entirety and the following is inserted:

        K.  alleging, based upon, arising out of, or attributable to any **Wrongful Act** committed prior to the beginning of the **Policy Period**, if, on or before the earlier of the effective date of this **Policy** or the effective date of any **Policy** issued by the **Company** to which this **Policy** is a continuous renewal or replacement, the **Insured's** Chief Executive Officer, Chief Financial Officer, President, Chairman of the Board, General Counsel, and Risk Manager (or the functional equivalent of such positions) knew or reasonably could have foreseen that such **Wrongful Act** would result in a **Claim**;

4.  Section IV, **Extended Reporting Period**, is amended by deleting the phrase "and does not obtain replacement coverage as of the effective date of such termination or nonrenewal".

5.  Section VI, Conditions, is amended as follows:

    a.  Subsection A, Notice, is amended by deleting the phrase "30 days" and inserting the phrase "60 days".

    b.  Subsection D, Representations, is amended as follows:

        i.  The phrase "this **Policy** shall be void ab initio" is deleted and the following is inserted in its place:

           this **Policy** shall be void ab initio as to any **Insured** who knew the facts misrepresented or the omissions, whether or not such person knew of the **Application** or this **Policy**.

        ii.  The following provision is added:

           For purposes of this subsection D, only the knowledge of the **Named Insured's** and any **Subsidiary's** Chief Executive Officer, Chief Financial Officer, President, Chairman of the Board, General Counsel, or Risk Manager (or the functional equivalent of such positions) shall be imputed to the **Named Insured** and any **Subsidiary**.  Further, the knowledge of an **Insured**, other than the aforementioned individuals, shall not be imputed to any other **Insured**, and the knowledge of an **Insured Person** shall not be imputed to any other **Insured Person**.

    c.  Subsection E, Termination, numbered paragraph 1 is deleted in its entirety and the following is inserted:

        1.  This **Policy** shall terminate at the earliest of the following times:

           a.  the effective date of termination specified in a prior written notice by the **Named Insured** to the **Company**;

           b.  10 days after receipt by the **Named Insured** of a written notice of termination from the **Company** for failure to pay a premium when due, unless the premium is paid within such 10 day period;

           c.  upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations; or

           d.  at such other time as may be agreed upon by the **Company** and the **Named Insured**.

    d.  Subsection F, Territory and Valuation is amended by deleting numbered paragraph 1 and inserting the following:

        1.  Coverage under this **Policy** shall extend to **Wrongful Acts** occurring, **Claims** made, and **Damages** and **Claims Expenses** sustained anywhere in the world, where legally permissible.

    e.  The following new subsections are added:

      •  **Spouses**

        The spouses and legally recognized domestic partners of **Insureds** shall be considered **Insureds** under this **Policy**, but coverage is afforded only for a **Claim** arising solely out of their status as a spouse or domestic partner where the **Claim** seeks damages from marital community property, jointly held property or property transferred from a natural person **Insured** to such spouse or legally recognized domestic partner.  No coverage is provided for any **Wrongful Act** actually or allegedly committed by such spouse or legally recognized domestic partner.   All of the terms and conditions of

this **Policy** including, without limitation, the Retention applicable to **Damages** and **Claims Expenses** incurred by **Insureds** shown in Item 4 of the Declarations shall also apply to **Damages** and **Claims Expenses** incurred by such spouses and legally recognized domestic partners.

- **Allocation**

   A. If **Damages**, in part, covered by this **Policy** and, in part, not covered by this **Policy**, are incurred on account of a single **Claim** for which the **Company** retains the duty to defend, the **Policy** will pay one hundred percent (100%) of reasonable and necessary **Claims Expenses** incurred in the defense of such **Claims**.

   B. **Damages** and **Claims Expenses** incurred by the **Insured** on account of any **Claim** for which the **Company** does not retain the duty to defend shall be allocated between covered and uncovered loss based on the relative legal and financial exposures of the parties and loss at issue.

6. Section VII, Material Changes In Conditions, subsection A, is amended by deleting the phrase "exceeds 10%" and inserting the phrase "exceeds 20%".

All other terms and conditions of this **Policy** remain unchanged.

---

Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**11** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

**Management Consultants Endorsement with Technology Services Extension**

It is agreed that:

1.  Section II, Definitions, is amended as follows:

    a.  Subsection P, the definition of **Professional Services** is amended by adding the following:

    > **Professional Services** also means the following services, provided that they are performed for others by an **Insured** or by any person or entity for whom the **Insured** is legally liable.

    1.  The design, development or maintenance of computer hardware, software or related electronic equipment;

    2.  Information technology consulting and information systems or network analysis, design, programming or integration;

    3.  Database design and the caching, collecting, compiling, processing, mining, or recording or analysis of data; and

    4.  Other related services, including:

        a.  information system outsourcing;

        b.  **Website** design, programming or maintenance;

        c.  information system or **Website** hosting; and

        d.  application software services delivery.

    b.  The following definitions are added,:

    - **Breach of Privacy** means the unauthorized disclosure of sensitive personal or private information stored or otherwise maintained on the **Named Insured's Computer System** onto the **Internet** or otherwise into the public domain.

    - **Computer System** means computer hardware, software, and the data stored thereon, as well as associated input and output devices, data storage devices, networking equipment and electronic backup facilities.

    - **Denial of Service Attack** means an event that is caused by a third party's malicious activity and that restricts or prevents access to an **Internet Website** or other network resource by other third parties authorized to gain access to that **Website** or resource.

    - **Electronic Content** means any data, text, sounds, images or similar matter disseminated electronically, including on the **Insured's Internet Website**. **Electronic Content** does not include any prepackaged software or computer code.

    - **Internet** means the worldwide public network of computers which enables the transmission of electronic data and which includes intranets, extranets and virtual private networks.

    - **Malicious Code** means unauthorized and corrupting or harmful software code, including but not limited to computer viruses, Trojan horses, worms and logic bombs.

- **Named Insured's Computer System** means a **Computer System** leased, owned, or operated by the Named Insured, or operated solely for the benefit of the **Named Insured** by a third party service provider under written contract with the **Named Insured**.

- **Network Operations Security** means those activities performed by the **Named Insured**, or by others on behalf of the **Named Insured**, to protect against **Unauthorized Access** to and the **Unauthorized Use** of the **Named Insured's Computer System**.

- **Trade Secret** means information, including a formula, pattern, compilation, program, device, method, technique or process, that derives independent economic value, actual or potential, from not being generally known to or readily ascertainable by other persons who can obtain value from its disclosure or use, so long as reasonable efforts have been made to maintain its secrecy.

- **Unauthorized Access** means the gaining of access to a **Computer System** by an unauthorized person or persons, or by an authorized person or persons in an unauthorized manner.

- **Unauthorized Use** means the use of a **Computer System** by an unauthorized person or persons or an authorized person in an unauthorized manner.

- **Website** means the software, content and other materials accessible via the **Internet** at a designated Uniform Resource Locator address.

c.  Subsection T, the definition of **Wrongful Act**, is deleted in its entirety and the following is inserted,:

> **Wrongful Act** means any actual or alleged negligent act, error, omission committed by the **Insured** in its capacity as such or by any other person or entity for whom the **Insured** is legally liable, in:
>
> a.  the rendering or failure to render the **Professional Services** specified in Item 7 of the Declarations to others; or
>
> b.  the failure of the **Insured's** computer or telecommunications hardware, software or related electronic equipment to perform the function or serve the purpose intended, but only when provided in conjunction with the **Professional Services** specified in this endorsement to others.

2.  Section III, Exclusions is amended by adding the following exclusions,:

- alleging, based upon, arising out of, or attributable to the guaranteeing of the availability of funds or specified rate of return or interest;

- alleging, based upon, arising out of, or attributable to any Insured making warranties or guarantees as to the future value of investments;

- alleging, based upon, arising out of, or attributable to loss alleged to have been sustained through fluctuation in the market value of any security;

- alleging, based upon, arising out of, or attributable to the failure of investments to perform as expected or desired;

- alleging, based upon, arising out of, or attributable to the guarantee or warranty of potential sales, earnings, profitability or economic value;

- alleging, based upon, arising out of, or attributable to the failure to secure financing

- alleging, based upon, arising out of, or attributable to the preparation of pro-forma statements which are the basis of and/or are used with third parties for the purpose of securing capital through debt, equity creditor or other means;

- alleging, based upon, arising out or attributable to the performance of or failure to perform services as an attorney, accountant or actuary;

- alleging, based upon, arising out of, or attributable to a failure of **Network Operations Security**, **Unauthorized Access** to or **Unauthorized Use** of the **Named Insured's Computer System,** a **Denial of Service Attack** against any **Computer System**, any **Breach of Privacy**, or any use of or tampering with data on the **Insured's Websites**;

- alleging, based upon, arising out of, or attributable to the introduction of **Malicious Code** to any **Computer System**;

- alleging, based upon, arising out of, or attributable to electrical or mechanical failures or interruption, including but not limited to any electrical disturbance, surge, spike, brownout or blackout; and outages to gas, water, telephone, cable, satellite, telecommunications or other infrastructure, including without limitation **Internet** access service provided by the **Internet** service provider that hosts the **Insured's Website**, unless such infrastructure is under the **Insured's** operational control;

- alleging, based upon, arising out of, or attributable to any policies, procedures, methods, equipment, hardware, firmware, or software for creating, maintaining or managing any secure means for transmitting, receiving or exchanging electronic information using or involving digital certificates, digital signatures, certification authorities, public or private keys or encryption technologies, or any other similar type of technology, however denominated;

- alleging, based upon, arising out of, or attributable to the actual or alleged inaccurate, inadequate, or incomplete description of the price of goods, products or services; or as a result of the **Insured's** cost guarantees, cost representations, contract price, pricing guarantees or estimates of probable costs or cost estimates being exceeded;

- alleging, based upon, arising out of, or attributable to any costs or expenses incurred by any **Insured** or others to recall, repair, replace, upgrade, supplement or remove the **Insured's** products, including products which incorporate the **Insured's** products or services, from the marketplace, or from loss of use by any **Insured** or others that arises out of such withdrawal or recall.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**12** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Additional Insured (Automatic Pursuant to Contract)

It is agreed that:

1. Section II, Definitions, subsection I, the definition of **Insured**, is amended by adding the following:

   **Insured** also means any client or customer of the **Named Insured**, but only if a written contract entered into by the **Named Insured** specifically requires that such client or customer be added as an additional **Insured** for professional liability or errors and omissions insurance, and only for **Claims** (i) first made on or after the effective date of this endorsement and (ii) for vicarious or imputed liability of such client or customer which results from **Wrongful Acts** committed solely by the **Named Insured**.

   The **Policy** will not provide coverage for any **Wrongful Act** committed by such client or customer referenced above which is added to this **Policy** as an additional **Insured**.

2. Section III, Exclusions, is amended by deleting exclusion E, but solely with respect to **Claims** asserted by such client or customer referenced above for **Wrongful Acts** actually or allegedly committed by an **Insured** in the performance of or failure to perform **Professional Services**.


All other terms and conditions of this **Policy** remain unchanged.


_____
Authorized Representative

PF-19806 (02/06) EO                                                                                               Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**13** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Tie-In of Limits

It is agreed that Section V, Limits of Liability And Retention, subsection A.3 of the **Policy** is amended by adding the following:

Notwithstanding  anything in  this **Policy** or  policy number G23664525 010 to the  contrary, the maximum aggregate limit of liability of the **Company** for the sum of:

1. all **Damages** and **Claims Expenses** because of all **Claims**, including all **Claims** alleging **Interrelated Wrongful Acts**, first made and reported during the **Policy Period** of this **Policy**, and;
2. all **Damages** and **Claims Expenses** because of all **Claims**, including all **Claims** alleging **Interrelated Wrongful Acts**, first made and reported during the **Policy Period** of policy number G23664525 010

shall not exceed $10,000,000

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Chemonics International, Inc.** | | | Endorsement Number<br>**14** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G27556346 005** | Policy Period<br>**04/15/2019  to 04/15/2020** | Effective Date of Endorsement<br>**04/15/2019** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## Amendatory Endorsement – District of Columbia

IF THERE IS ANY CONFLICT BETWEEN THE **POLICY**, OTHER ENDORSEMENTS TO THE **POLICY** AND THIS ENDORSEMENT, THE TERMS PROVIDING THE BROADEST COVERAGE INSURABLE UNDER APPLICABLE LAW SHALL PREVAIL.

It is agreed that:

1.  Section VI of the **Policy** is amended at Condition E, Termination, as follows:

    a.  Subsection 1c is deleted in its entirety and the following is inserted:

        c.  if this **Policy** has been in effect for 30 days or less and is not a renewal of a **Policy** the **Company** issued, 10 days after receipt by the **Named Insured** of a written notice of termination from the **Company** for failure to pay a premium when due, unless the premium is paid within such 10 day period;

        if this **Policy** has been in effect for more than 30 days or is a renewal of a **Policy** the **Company** issued, 30 days after receipt by the **Named Insured** of a written notice of termination from the **Company** for failure to pay a premium when due, unless the premium is paid within such 30 day period;

    b.  the following are added:

        •  If this **Policy** has been in effect for more than 30 days, or is a renewal of a **Policy** the **Company** issued, the **Company** may terminate this **Policy** only for one or more of the following reasons:

            a.  failure to pay a premium when due;

            b.  the **Insured** has made a material and willful misstatement or omission of fact to the **Company** or its employees, agents, or brokers in connection with any **Application** to or **Claim** against the **Company**;

            c.  the property or other interest of the **Insured** shall have been transferred to a person other than the **Insured** or beneficiary, unless the transfer is permissible under the terms of the **Policy**, or unless the property, interest or use thereof shall have materially changed with respect to its insurability.

        •  Notice of termination from the **Company** will state the effective date of termination and the reason(s) for termination, and will be mailed by certified mail to the **Named Insured** at the last mailing address known to the **Company**.  At least 5 days before mailing the notice to the **Named Insured**, the **Company** will notify the agent or broker of record who wrote the **Policy**.  Proof of mailing will be sufficient proof of notice.

2.   The following Condition is added to section VI of the **Policy**:

- NONRENEWAL

  If the **Company** elects not to renew this **Policy**, it will mail written notice of nonrenewal by certified mail to the **Named Insured** at the last mailing address known to the **Company**.  Notice of nonrenewal will state the reason(s) for nonrenewal and will be mailed at least 30 days before the end of the **Policy Period**.  At least 5 days before mailing the notice to the **Named Insured**, the **Company** will notify the agent or broker of record who wrote the **Policy**.  Proof of mailing will be sufficient proof of notice.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our  website at http://www.chubbproducercompensation.com or by calling the  following toll-free  telephone number:
1-866-512-2862.

ALL-20887a (03/16)



# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.