**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHEMONICS INTERNATIONAL, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 1:24-cv-00817-RGA |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| ACE AMERICAN INSURANCE ) | |
| COMPANY, ) | **PUBLIC VERSION** |
| ) | **SEPTEMBER 23, 2024** |
| Defendant. ) | |
| ) | |
| ) | |

**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)**

Robert J. Katzenstein (No. 378)
Julie M. O'Dell (No. 6191)
SMITH, KATZENSTEIN & JENKINS LLP
1000 N. West Street
Suite 1501
Wilmington, DE 19801
Telephone: (302) 652-8400
rjk@skjlaw.com
jmo@skjlaw.com

*Attorneys for ACE American Insurance
Company*

OF COUNSEL:

Alan Joaquin
Alexandra N. Kajari
WERNER AHARI MANGEL LLP
2112 Pennsylvania Avenue Northwest
Suite 200
Washington, D.C. 20037
(202) 599-1030
AJoaquin@wam.law
Akajari@wam.law

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      INTRODUCTION ............................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

III.    SUMMARY OF ARGUMENT ....................................................................................... 2

IV.     CONCISE STATEMENT OF FACTS ........................................................................... 2

   A.   The Parties Have Minimal Connections to Delaware ................................................ 2

   B.   The USAID Claim Arises out of D.C. ...................................................................... 3

   C.   Non-Party Witnesses Are Employed In, Reside In, or Are Closer to D.C. ........................ 5

V.      ARGUMENT ................................................................................................................... 6

   A.   Transfer Legal Standard ............................................................................................ 6

   B.   Venue is Proper in the District of Columbia .............................................................. 7

   C.   The Private Interest Factors Weigh in Favor of Transfer ................................................. 10

        1.    Plaintiff's Choice of Forum Is Not Dispositive ........................................................... 10

        2.    Defendant's Preferred Forum Favors Transfer ...................................................... 11

        3.    The Alleged Claims in this Action Arose in D.C. ...................................................... 11

        4.    The Convenience of the Parties Weighs in Favor of Transfer ...................................... 13

        5.    The Convenience of Potential Third-Party Witnesses Favors Transfer........................ 13

        6.    The Key Documents and Relevant Proof is Located in D.C. ...................................... 14

   D.   The Public Interest Factors Weigh in Favor of Transfer ................................................. 15

        1.    The District of Columbia Could Enforce a Judgment in this Action............................ 15

        2.    This Action Would Be Less Expensive and More Efficiently Litigated in the District of Columbia.................................................................................................................... 15

        3.    Administrative Difficulties with Court Congestion Favor Transfer ............................. 15

        4.    The District of Columbia Has a Greater Interest in this Dispute.................................. 16

        5.    The Public Policy in the District of Columbia Favors Transfer .................................... 17

        6.    The District of Columbia Is More Familiar With the Laws of D.C............................... 17

VI.     CONCLUSION................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*,
   2013 WL 5461876 at *3 (D. Del. Sept. 30, 2013) ....................................................... 11, 14, 17

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................................................ 9

*Ceradyne, Inc. v. RLI Ins. Co.*,
   2021 WL 3145171, at *4-5 (D. Del. July 26, 2021) ......................................................... passim

*Certain Underwriters at Lloyds, London v. Chemtura Corp.*,
   160 A.3d 457 (Del. 2017) ................................................................................................ 18

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
   2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) .................................................... 6

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
   2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) ...................................................... 10

*Fuisz Pharma v. Theranos, Inc.*,
   No. 11–1061–SLR–CJB, at *12 (D. Del. May 18, 2012) ....................................... 13

*Harris v. Lord & Taylor LLC*,
   2019 WL 1854562, at *5 (D. Del. Apr. 25, 2019) ..................................................... 17

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310, 316 (1945) ............................................................................................... 9

*Intellectual Ventures I LLC v. Altera Corp.*,
   842 F. Supp. 2d 744 (D. Del. 2012) .............................................................................. 17

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir.1995) ...................................................................................... 6, 7, 14, 15

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   2013 WL 105323, at *3 (D. Del. Jan. 7, 2013) ......................................................... 10

*Mitel Networks Corp. v. Facebook, Inc.*,
   943 F. Supp. 2d 463 (D. Del. 2013) .............................................................................. 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. FedEx Corp.*,
   2023 WL 4623626, at *11 (Del. Super. July 18, 2023) ........................................... 19

*Nationwide Mut. Ins. Co. v. Richardson*,
  270 F.3d 948 (D.C. Cir. 2001) ............................................................. 16, 17

*Paycom Software, Inc. v. Travelers Cas. and Sur. Co. of Am.*,
  2022 WL 1063845, at *5 (D. Del. Apr. 8, 2022) ....................... 15, 16, 17

*Qinetiq Ltd. v. Oclaro, Inc.*,
  2009 WL 5173705, at *2 (D. Del. Dec. 18, 2009) ................................ 6, 7

*RSUI Indem.Co. v. Murdock*,
  248 A.3d 887 (Del. 2021) ......................................................................... 18

*Travelers v. CNH Industrial America, LLC*,
  191 A.3d 288 (Del. 2018) ......................................................................... 19

*United States ex rel. Touhy v. Regan*,
  340 U.S. 462 (1951) .................................................................................. 14

*Vantage Commodities Fin. Serv. I, LLC v. Assured Risk Transfer PCC, LLC*,
  321 F. Supp. 3d 49 (D.D.C 2018),
  *aff'd*, 31 F.4th 800 (D.C. Cir. 2022) ........................................................ 8

*Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*,
  959 F. Supp. 2d 166 (D.D.C. 2013) .......................................................... 8

*Whitwell v. Archmere Acad., Inc.*,
  463 F. Supp. 2d 482 (D. Del. 2006) ......................................................... 18

**Statutes**

28 U.S.C. § 1404(a) ......................................................... 1, 2, 6, 10
28 U.S.C. § 2201 ....................................................................... 1, 10
31 U.S.C. §§ 3729-3733 ..................................................................... 5
28 U.S.C. § 1332 ................................................................................. 7
28 U.S.C. § 1391 ................................................................................. 9

## I.   <u>INTRODUCTION</u>

For the reasons stated below, this insurance coverage action is more appropriately suited for the United States District Court for the District of Columbia. In this action, coverage is sought for the "USAID Claim," which was initiated in District of Columbia ("D.C."), by the D.C. office of the Department of Justice ("DOJ"), on behalf of the United States Agency for International Development ("USAID"), which is also located in D.C The USAID Claim concerns services allegedly performed by Chemonics International, Inc. ("Plaintiff" or "Chemonics"), which is headquartered in D.C., pursuant to a contract it entered into with the USAID in D.C. The insurance policy at issue in this coverage action identifies the relevant insured as Chemonics, using Chemonics' D.C. address. Other than Chemonics being incorporated in Delaware, the parties to this action have no other connection to Delaware. Based on the foregoing, Defendant ACE American Insurance Company ("Defendant" or "ACE") respectfully requests that this Court transfer this case to the United States District Court for the District of Columbia.

## II.   <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Chemonics recently initiated this insurance coverage action with the filing of its Complaint against ACE on July 15, 2024. (D.I. 1). Chemonics' Complaint seeks damages from ACE for breach of contract and declaratory relief pursuant to 28 U.S.C. § 2201. (*Id.* at ¶1). The Complaint alleges that ACE breached its policy by failing to pay legal fees and expenses Chemonics incurred and is incurring in defending the USAID Claim. ACE has not yet filed its Answer to the Complaint. On August 2, 2024, the parties filed a Stipulation to extend the time to respond to Complaint, (D.I. 6), which this Court so Ordered. (D.I. 6). Now, ACE files this opening brief in support of its motion to transfer the case to the District of Columbia pursuant to 28 U.S.C. § 1404(a).

III.    **SUMMARY OF ARGUMENT**

1.      Pursuant to 28 U.S.C. § 1404(a), this Court has the authority to transfer this case to the United States District Court for the District of Columbia "where it might have been brought" if doing so serves "the convenience of parties and witnesses, in the interest of justice."

2.      This action "might have been brought" in the District of Columbia because that District has subject matter jurisdiction over the alleged claims, personal jurisdiction over the parties, and is a proper venue.

3.      The relevant factors to be considered under 28 U.S.C. § 1404(a), weigh in favor of transfer because Plaintiff's connection to Delaware is minimal, the USAID Claim underlying this coverage action arises out of contracts executed and performed by Chemonics in D.C., and the underlying investigation concerning Plaintiff's performance under such contracts was initiated in D.C. and conducted by the DOJ in D.C. on behalf of the USAID, which is located in D.C.

4.      The additional private and public interest factors considered by the Court overwhelmingly weigh in favor of transfer because, among other things, the District of Columbia would not only be more convenient for Plaintiff but also for third-party witnesses, the USAID Claim was initiated there and evidence concerning the claim is more likely located there, the applicable insurance policy was issued there, and there is a lesser number of cases pending in the District of Columbia compared to this District.

IV.    **CONCISE STATEMENT OF FACTS**

      **A.  The Parties Have Minimal Connections to Delaware**

Chemonics, a D.C. headquartered organization, assists with supply chain management services to organizations to assist with global sustainability. (D.I. 1 at ¶¶ 10, 31). Chemonics seeks to resolve this coverage action in this District. However, the only connection the parties have to Delaware is that it is Chemonics' state of incorporation (*Id.* at ¶¶13-14). Moreover, ACE, like

Chemonics, is not headquartered in Delaware, but instead Pennsylvania, and is a corporation organized under the laws of the State of Pennsylvania. (*Id.* at ¶11).[1]

While Chemonics has minimal connections to Delaware, Chemonics' principal place of business is located in D.C. (*Id.* at ¶10). In addition, the applicable policy in this coverage dispute, Policy Number EON G27556346 005 (the "Policy"), was issued to Chemonics in D.C., with its principal address identified as "1717 H St. NW Ste. 1, Washington, D.C.  20006." (Ex. A., Policy).

### B.  The USAID Claim Arises out of D.C.

The USAID Claim involves two contracts Chemonics entered into with two separate organizations, Global Fund and USAID. Pursuant to both contracts, Chemonics was to manage an integrated supply chain of the organizations' health products in various countries, including Nigeria. (D.I. 1 at ¶31). Chemonics provided both organizations technical assistance and logistical support through management of warehouses, long-haul distribution between warehouses, and last mile distribution of their health products to certain health facilities in Nigeria. To enable it to provide such services to Global Fund and USAID, Chemonics retained a Nigerian entity as a subcontractor, Zenith Carex ("Zenith"). (*Id.* at ¶33).

---

[1] We note that ACE is licensed to do business and issue contracts covering risks located in Delaware. The Policy at issue here, however, is not one of those contracts.

███████████████████████████████████████████████

███████████████████████████████████████████████

███ As discussed below, the USAID Claim, in part, asserts that Chemonics' headquarters failed to monitor and identify the alleged price inflation and fraud of Zenith. Thus, Chemonics' conduct at issue, at least in significant part, involved activities allegedly performed in D.C. None of Chemonics' services were performed in Delaware.

In February 2020, Global Fund made Chemonics aware of a discrepancy in Zenith's billing for its long-haul distribution and last mile delivery services. (D.I. 1 at ¶36). Thereafter, Global Fund Office of the Inspector General ("OIG") commenced an investigation and issued a report (the "March 2020 OIG Report"), (*id.* at ¶39), the findings of which were later confirmed in a March 2021 OIG Report, (*id.* at ¶42). These reports concerned Zenith's alleged fraud in improperly inflating its pricing for long-haul distribution and last mile delivery services and Chemonics' alleged negligent failure to monitor and flag such fraudulent conduct. (Ex. C, March 2021 OIG Report). The March 2021 OIG Report found, in relevant part, that Chemonics' Headquarters—located in D.C.—"did not monitor individual third-party logistics provider sub-contracts, or complete secondary checks on invoices" and failed to flag Zenith's massive overspending when signing off on approval for a ceiling increase modification for Zenith." (*Id.* at 16, §2.4).

Regarding the USAID Claim, on July 19, 2021, ██████████████████████ ██████████████████ issued a letter to Chemonics' in-house legal counsel in D.C. advising Chemonics that the DOJ, on behalf of USAID, was investigating the matter concerning Zenith's overcharges for long haul delivery services and improper billings for last mile delivery services and possible legal action for the submissions of false claims to the government (D.I. 1 at ¶53).

████████████████████████████

On July 22, 2022, the DOJ, through its Commercial Litigation Branch located in D.C., issued a Civil Investigative Demand ("CID").  Such overcharges and improper billings were caused in significant part in D.C. by Chemonics headquarters' failure to properly monitor its field offices' review of the invoices and perform secondary checks on the invoices, and its disregard of Zenith's massive overspending requiring its authorization of ceiling increases in its subcontract with Zenith. (Ex. C at 16-17, §2.4).

## C.  Non-Party Witnesses Are Employed In, Reside In, or Are Closer to D.C.

At this early stage of the litigation, ACE has not yet confirmed non-party witnesses, but it appears several potential non-party witnesses that likely possess relevant information bearing on the claims and defenses in this action, are employed or reside in D.C. or are closer to D.C.  No known potential witnesses are located in Delaware.

First, ACE anticipates seeking discovery from certain representatives of USAID with firsthand knowledge of: the Chemonics contracts and the services Chemonics was to perform through those contracts; the interrelationship between the services Chemonics provided USAID and the Global Fund; and USAID's initial discovery of the alleged Zenith fraud and negligence of Chemonics.  Because USAID's relevant office is located in Washington DC, it is likely that ACE will seek information from certain USAID representatives located there.

Second, ACE likely will seek information from Chemonics' counsel, ███████ who assisted with the DOJ CID and settlement discussions concerning the USAID Claim. ACE anticipates seeking information, deposition testimony, and/or trial testimony from, among others, ██████████████████████████████████████████

Third, ACE will consider seeking documentation, deposition testimony, and/or trial testimony from Chemonics' broker involved in the USAID Claim, Marsh USA Inc. ("Marsh"). Specifically, ACE anticipates seeking such information from representatives at Marsh that were involved in the USAID Claim, including, among others, ██████████████████████ ███████████████████████████████

## V.   ARGUMENT

### A.   Transfer Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party "has the burden to establish that the proposed transferee forum is a proper forum and that a balancing of the proper interests weighs in favor of transferring the case there." *Qinetiq Ltd. v. Oclaro, Inc.*, Civ. A. No. 09-372 (JAP), 2009 WL 5173705, at *2 (D. Del. Dec. 18, 2009) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995)). In evaluating a motion to transfer, the threshold question is whether the venue where the defendant seeks to transfer the action is proper. *Id.* at *2. That is "the case could have been brought in the district to which the movant wishes to transfer." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citing *Jumara*, 55 F.3d at 878).

---

█ ██████████████████████████████████████████

████████████████████

If venue would have been proper in that district, courts then consider additional private and public interest factors—the factors set forth in *Jumara*—to determine "'whether on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum.'" *Jumara*, 55 F.3d at 879 (citation omitted). *See also Cisco Sys., Inc.*, 2022 WL 16921988, at *3-4. The private interest factors include: (1) the plaintiff's choice of forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *See Jumara*, 55 F.3d at 879. The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

## B.  <u>Venue is Proper in the District of Columbia</u>

Under Section 1404(a), the District of Columbia is a "district in which this action might have been brought" because it "has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Qinetiq Ltd.*, 2009 WL 5173705, at *2 (citations omitted). Because these factors are satisfied, venue is proper in the District of Columbia.

***First***, the District of Columbia would have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees and costs. As Chemonics alleged in its Complaint, Chemonics is organized under Delaware law and

headquartered in D.C., (D.I. 1 at ¶10), and ACE is incorporated in the state of Pennsylvania and has its principal place of business in the state of Pennsylvania. (*Id.* at ¶11). Therefore, the parties have complete diversity of citizenship. Further, Chemonics claims that it has incurred $7.6 million in defense costs in defending the USAID Claim and that ACE is obligated to pay for the claim expenses. (*Id.* at ¶77). Thus, the amount in controversy exceeds the requisite threshold of $75,000.

**Second**, the District of Columbia would have personal jurisdiction over the parties because ACE is a licensed insurer authorized to do business in D.C., routinely conducts business in D.C., and issued the contract of insurance in this matter to Chemonics in DC, where it is a resident. *See Vantage Commodities Fin. Serv. I, LLC v. Assured Risk Transfer PCC, LLC*, 321 F. Supp. 3d 49, 55-57 (D.D.C 2018), *aff'd*, 31 F.4th 800 (D.C. Cir. 2022).

To determine whether there is personal jurisdiction over a non-resident defendant, a court must review whether jurisdiction is proper under the District of Columbia long-arm statute and whether jurisdiction accords with the demands of due process. *Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 959 F. Supp. 2d 166, 171 (D.D.C. 2013). Under D.C.'s long-arm statute, a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's:

> (1) transacting any business in the District of Columbia;
>
> . . .
>
> (6) contracting to insure . . . any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing[.]

D.C. Code 13-423. Personal jurisdiction here can be established under either of these clauses because this action arises out of a dispute concerning the Policy, which ACE contracted for and issued to Chemonics, a company headquartered in D.C. *See Vantage*, 321 F. Supp. 3d at 56 (concluding that a reinsurer contract with a D.C. company satisfied D.C.'s long-arm statute).

As to whether due process is satisfied, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The threshold question is whether "the defendant has purposefully directed his activities at residents of the forum, and the ligation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotation marks and citation omitted). District courts have routinely found that insurers that enter into contracts with residents of D.C. at the time the contract was executed "establishes a substantial connection" between the insurers and D.C. to satisfy due process requirements. *See Vantage*, 321 F. Supp. 3d at 57–58. Here, this Court should conclude that ACE's contacts with D.C. satisfy due process requirements because ACE issued a contract to a D.C. headquartered insured with a principal place of business at the time the contract was executed. Moreover, in significant part, the alleged negligent services Chemonics provided—the monitoring of its field offices' review of inflated invoices, the re-billing of those inflated invoices allocable to USAID, and the authorizing of massive ceiling increases of Zenith—were performed in D.C.

***Third***, venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2) or (b)(3). Venue is proper under Section 1391(b)(2) because "a substantial part of the events or omissions giving rise" to this coverage action occurred in D.C. That is because this coverage action concerns a dispute regarding the Policy that was issued to Chemonics in D.C., (*see* Ex. A, Declarations, Item 1) and the USAID claim involves actions of Chemonics headquarters under a contract it executed with another organization in D.C. (*See* Ex. B at 2).

### C.  **The Private Interest Factors Weigh in Favor of Transfer**

#### 1.  **Plaintiff's Choice of Forum Is Not Dispositive**

Courts in the Third Circuit and this District "normally defer to a plaintiff's choice of forum," *Jumara*, 55 F.3d at 880, "as long as a plaintiff has selected the forum for some legitimate reason." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001). However, when a plaintiff has no connection to Delaware other than its choice to sue here and its incorporation in Delaware, that alone "will not dominate the balancing to the same extent as it otherwise might[.]" *Ceradyne, Inc. v. RLI Ins. Co.*, C.A. No. 20-1398 (MN), 2021 WL 3145171, at *4-5 (D. Del. July 26, 2021) (internal quotation marks and citation omitted). *See also Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 469 (D. Del. 2013) (citations omitted) ("Though [plaintiffs] has chosen to litigate in Delaware through [the Delaware plaintiff's] incorporation, and this decision must be accorded some deference in the § 1404(a) analysis, the fact that Delaware is not home to either [plaintiffs'] principal place of business reduces somewhat the weight this factor is accorded.").

Here, Chemonics is headquartered and has its principal place of business in D.C. (D.I. 1 at ¶10). To the best of ACE's knowledge, Chemonics has no offices, employees, or is, in any other way, physically located in Delaware. Accordingly, the only factor connecting Chemonics to Delaware is its state of incorporation. This factor alone should not be given the "paramount consideration" that is afforded to plaintiffs who choose to litigate where they are actually physically located. *Linex Techs., Inc. v. Hewlett-Packard Co.*, Civ. A. No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013). Thus, this Court should not consider this factor dispositive or give it considerable weight when evaluating whether to transfer this action.

## 2. Defendant's Preferred Forum Favors Transfer

Here, ACE's preferred forum is the District of Columbia. This Court should give this factor considerable weight and find that it weighs in favor of transfer. In evaluating this factor, the Court considers whether a defendant can "articulate rational, legitimate reasons to support its preferred venue." *Ceradyne*, 2021 WL 3145171 at *5. Recently, in *Ceradyne*, this Court concluded that the defendant's preferred forum should weigh in favor of transfer because the defendant insurers demonstrated that the underlying litigation at issue in the coverage action and the events giving rise to the coverage action took place in the preferred venue. *Id.*

In this action, the USAID Claim at issue arose out of a contract issued by and between two D.C. organizations, Chemonics and USAID. Further, the USAID Claim involves a DOJ investigation arising from a CID issued out of D.C. Lastly, ACE anticipates seeking documents and deposition and/or trial testimony from the USAID representatives, Chemonics' broker representatives, Chemonics' defense counsel, and employees at Chemonics' headquarters, who are located or might be located in, or close to, D.C. These reasons serve as a legitimate and rational reason for this factor to weigh in favor of transfer.

## 3. The Alleged Claims in this Action Arose in D.C.

This factor weighs strongly in favor of transfer. Courts give this factor deference and find it weighs in favor of transfer when the insurance policy is issued in the preferred forum and the underlying action leading to the claim took place in or arose from the preferred forum. *See, e.g.*, *Ceradyne, Inc.*, 2021 WL 3145171 at *6 (finding that claim arose out of preferred forum where policy was issued and suit was litigated and settled); *Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, C.A. No. 12-775-LPS, 2013 WL 5461876 at *3 (D. Del. Sept. 30, 2013) ("There is no indication that any of the operative events occurred in Delaware. By contrast, much of pertinence to the parties' dispute occurred in California. In particular, the Policy has multiple connections to

11

California—including showing California addresses for the insured—and no connection to Delaware. Additionally, the [underlying action] was litigated in California and involved a judgment that a California resident was injured by intentional wrongdoing in California . . . . Thus, this factor weighs strongly in favor of transfer.").

Here, the Policy was issued to Chemonics at its principal place of business in D.C. (Ex. A, Declarations, Item 1). ███████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

In addition, the USAID Claim arose out of an investigation initiated in D.C. through the DOJ's issuance of a CID to Chemonics, ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████ The Global Fund OIG, in its March 2021 OIG Report, in part, attributed the failure of Chemonics' headquarters to monitor its field offices' review of its subcontractors' invoices and contracts to Zenith's alleged billing discrepancies and fraud. (Ex. C at §2.4). The CID also requested documentation concerning Chemonics' alleged service failures performed at Chemonics's headquarters. In other words, the issues investigated by the DOJ, at least in substantial part, arose out of the Chemonics' actions at its D.C. headquarters.

#### 4.    The Convenience of the Parties Weighs in Favor of Transfer

This factor weighs in favor of transfer because neither ACE nor Chemonics is physically located in Delaware and Chemonics and its employees are physically located in D.C. In weighing this factor, courts consider: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Fuisz Pharma v. Theranos, Inc.*, No. 11–1061–SLR–CJB, , at *12 (D. Del. May 18, 2012) (citations omitted). Here, Chemonics is physically located in D.C. and to the best of ACE's knowledge, Chemonics has no employees physically located in Delaware. It would be more convenient for the parties to depose and/or seek trial testimony from Chemonics' employees where its employees are physically located.

#### 5.    The Convenience of Potential Third-Party Witnesses Favors Transfer

At this early stage, the parties have not yet identified potential witnesses for trial. However, ACE anticipates seeking testimony from thirty-party witnesses that are located outside of Delaware and outside of this Court's subpoena power. This Court previously has concluded that this factor does not require a definite showing that a third-party witness would refuse or be unavailable for trial in Delaware. Instead, this Court has held, "[i]t is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe those witnesses will refuse to testify absent a subpoena." *Linex*, 2013 WL 105323, at *5 (citation omitted).

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████

There is also reason to believe that the USAID employees will refuse to testify absent a subpoena given the USAID's relevant regulations. *See*, 22 C.F.R. Part 206. Those regulations set forth the procedures to be followed in proceedings in which the USAID is not a party and it receives a subpoena for the production or disclosure of materials and other information maintained in the files of the Agency or acquired by a person while employed by the USAID. *Id. See also*, *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951) (upholding existing laws which limit a party's right to subpoena government agencies such as the USAID). Absent a subpoena, it is highly unlikely that USAID representatives will participate in any document production or testimony.

Lastly, ACE is unaware of any potential third-party witnesses who physically are located or reside in Delaware. Thus, this Court should conclude that this factor weighs in favor of transfer.

### 6.  The Key Documents and Relevant Proof is Located in D.C.

Finally, in balancing the relevant private interest factors, this District considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. However, with the advancement of technology and electronic transmission of documents, courts have given this factor less weight. *See, e.g.*, *Andrews*, 2013 WL 5461876, at *3. Hower, this factor weighs in favor of transfer because the Policy was issued to Chemonics at its headquarters in D.C and the DOJ requested that Chemonics produce the documentation concerning the underlying investigation to the DOJ's D.C. address.

*       *       *

In balancing the private interest factors set forth in *Jumara*, and based on the foregoing analysis, such factors overwhelmingly favor transfer to the District of Columbia.

███████████████████████████

### D. **The Public Interest Factors Weigh in Favor of Transfer**

#### 1. **The District of Columbia Could Enforce a Judgment in this Action**

Under this factor, this Court merely considers whether a judgment would be enforceable in either of the two forums. Here, there is no dispute that both the District of Delaware and the District of Columbia could equally enforce any judgment in this action. Accordingly, this factor is neutral and should not weigh against transfer.

#### 2. **This Action Would Be Less Expensive and More Efficiently Litigated in the District of Columbia**

Under this second public interest factor, this district gives weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. For the reasons discussed above, litigating this coverage action in the District of Columbia would be less expensive and more efficient. This Court should give considerable weight to the third-party witnesses and the fact that they are located in D.C. or closer to D.C. Potential party witnesses, including Chemonics' employees, are also located in D.C.

If this action is transferred to the District of Columbia, these considerations alone could allow the parties to more efficiently schedule depositions, prepare witnesses for trial, and prevent trial delays for third-party witnesses that would not need to travel out of state. Lastly, this District has considered the burden and cost of travel for counsel of the parties. *See Paycom Software, Inc. v. Travelers Cas. and Sur. Co. of Am.*, Civ. A. No. 21-01403, 2022 WL 1063845, at *5 (D. Del. Apr. 8, 2022). Here, both counsel for Chemonics and ACE are located in D.C. Reducing travel for counsel will not only be less burdensome for counsel but will also reduce costs for both parties.

#### 3. **Administrative Difficulties with Court Congestion Favor Transfer**

This District has routinely weighed this factor in favor of transfer where the preferred district has a lesser caseload compared to this District. *See Ceradyne*, 2021 WL 3145171, at *8;

*Paycom*, 2022 WL 1063845, at *5 ("But given the relative caseloads of the districts, this factor favors transfer[] . . .  Delaware had 1,993 filings, or 498 per judgeship, in calendar year 2021, versus 1,837 filings, or 306 per judgeship, in the Western District of Oklahoma."). The most recent United States District Courts – National Judicial Caseload Profile,[3] states that in the 12-month period of 2023, the District of Columbia had 427 pending cases per judgeship compared to the District of Delaware, which had 559 pending cases per judgeship. In addition, courts have considered the number of weighted filings in each district. *Paycom*, 2022 WL 1063845, at *5 ("Cases that require substantially more judicial resources than the average civil case receive a higher weight."). For the 12-month period of 2023, the District of Columbia likewise had less weighted filings with 291 versus 666 in the District of Delaware. Because ACE's preferred forum has less court congestion, this Court should weigh this factor in favor of transfer.

### 4.   The District of Columbia Has a Greater Interest in this Dispute

First, this District has held that transfer is favored where the preferred forum has a strong interest in resolving disputes concerning an insured headquartered in that forum. *Paycom*, 2022 WL 1063845, at *6. Courts in the District of Columbia, in the choice of law context, have concluded that they hold a substantial interest in an action where the underlying events occurred in D.C. and the place of the insured's headquarters is in D.C. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 2001). Thus, the District of Columbia has a greater interest in deciding this coverage action because the insurance policy in question was issued to Chemonics in D.C. where Chemonics continues to be headquartered.

---

[3] *See* U.S. District Courts – National Judicial Caseload Profile – During the 12-Month Periods Ending December 31, 2018, through December 31, 2023, available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf

In addition, this District accepts that when the events of the underlying action occur in another district, "that [] other jurisdiction has a stronger interest in deciding the dispute." *Ceradyne*, 2021 WL 3145172, at *8 (citing *Andrews*, 2013 WL 5461876, at *4). Again, here the USAID Claim was initiated in D.C. and pertains to certain events that occurred in D.C.

Lastly, although Chemonics is incorporated in Delaware, this district has found that this interest "may be lower than that involving litigation 'solely among Delaware corporations.'" *Harris v. Lord & Taylor LLC*, No. 18-521 (MN), 2019 WL 1854562, at *5 (D. Del. Apr. 25, 2019) (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012)). Therefore, Chemonics' incorporation should not outweigh the strong interest that the District of Columbia has in resolving an action concerning an insured headquartered in D.C.

### 5. The Public Policy in the District of Columbia Favors Transfer

For many of the same reasons articulated above, this factor favors transfer. That is because the District of Columbia has a substantial interest in the insurance policy disputes regarding an insured headquartered in D.C. *See, e.g.*, *Nationwide*, 270 F.3d at 953. Further, this District has rejected the idea that its interest in disputes involving companies incorporated in Delaware is an interest that should be given weight in this analysis. *See Paycom*, 2022 WL 1063845, at *6 ("[A]lthough Delaware clearly has a public policy interest in the capabilities and conduct of officers and directors of Delaware corporations, this public policy is not directly related to insurance coverage disputes.") (quoting *Ceradyne*, 2021 WL 3145171, at *9).

### 6. The District of Columbia Is More Familiar With the Laws of D.C.

Lastly, this final public interest factor weighs in favor of transfer because it is ACE's position that the law of D.C. applies. A court in that district would have more familiarity with applying the laws of D.C. to the insurance policy disputes, including the parties' dispute concerning the consent to settle and duty to defend provisions.

This is a diversity action, and, therefore, Delaware's choice-of-law analysis applies to determine which law applies to this action. *See Whitwell v. Archmere Acad., Inc.*, 463 F. Supp. 2d 482, 485 (D. Del. 2006).This analysis includes considering the following factors: "i) determining if the parties made an effective choice of law through their contract; ii) if not, determining if there is an actual conflict between the laws of the different states each party urges should apply; and iii) if so, analyzing which state has the most significant relationship." *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017) (citations omitted).

Here, there is no choice of law provision in the Policy and, to the extent a conflict of applicable law exists, Delaware law applies the "most significant relationship" test to determine which state's law governs a contract dispute. *Ceradyne*, 2021 WL 3145171, at *9.[4] Under this test, this Court must consider the following contacts:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*See RSUI Indemnity Co.*, 248 A.3d at 896–97 (quoting Restatement (Second) of Conflict of Laws § 188). These factors are also balanced with the choice-of-law principles set forth in Restatement Section 6, which include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular

---

[4] Under the Restatement, there are certain presumptions, including that, "as a general matter, the law of the state 'which the parties understood was to be the principal location of the insured risk' should be applied because that state will have the most significant relationship." *RSUI Indem.Co. v. Murdock*, 248 A.3d 887, 896 (Del. 2021) (citing Restatement (Second) of Conflict of Laws § 193). However, courts applying Delaware law recognize that this presumption does not apply whereas here "the insurance contract is part of a comprehensive program insuring risks that are not confined to a single jurisdiction." *Id.* In such scenarios, courts review factors (a)-(e) referred to above, which "bear on the significance of the different states' relationship to the contract." *Id.*

field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* at 897 (quoting Restatement (Second) of Conflict of Laws § 6). Based on many of the reasons considered above in this Motion, these factors weigh in favor of applying D.C. law, including, among other reasons, that (1) Chemonics is headquartered in D.C., (2) the Policy was executed by a D.C. insured, (3) the Policy was issued in D.C., (4) the USAID Claim arises out of certain conduct performed under the contract at Chemonics' headquarters in D.C., and (5) district courts in the District of Columbia have held that they have substantial interest in an action where the underlying events occurred in D.C. and the place of the insured's headquarters is in D.C.

In recent decisions, Delaware Courts have held that under the most significant relationship test, the laws of jurisdictions outside of Delaware apply in factual scenarios similar to this action. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. FedEx Corp.*, C.A. No.: N22C-08-488 EMD CCLD, 2023 WL 4623626, at *11 (Del. Super. July 18, 2023) ("The Supreme Court emphasized that, when applying the *Second Restatement* factors to a corporate-wide insurance program, the inquiry should center on the insurance contracts and not the underlying claims. . . . It is true that certain parties are incorporated in Delaware but that, most likely, would not warrant the application of Delaware law."); *Travelers v. CNH Industrial America, LLC*, 191 A.3d 288 (Del. 2018) ("[A] Texas-based company [] sought insurance coverage from Travelers through a corporate-wide insurance program covering operations across multiple jurisdictions. [The insured] negotiated and secured insurance coverage, and managed its insurance program, out of its Texas offices. Thus, under the *Second Restatement* factors, Texas has the most significant relationship to the contracting parties and the dispute, and Texas law applies.").

Therefore, this Court should conclude that D.C. law would apply in this coverage dispute and weigh this factor in favor on transfer. This is especially true here where the Chemonics' activities at issue occurred, at least substantial part, in D.C.

*    *    *

In addition to the private interest factors weighing in favor of transfer, the public interest factors are either neutral or favor transfer. Accordingly, because venue is proper in the District of Columbia and the private and public factors, taken together, weigh in favor of transfer, this Court should grant ACE's motion to transfer this action to the District of Columbia.

## VI.  <u>CONCLUSION</u>

For the reasons stated above, ACE requests that this Court transfer this action to the District of Columbia pursuant to 28 U.S.C. § 1404(a).

Dated: September 16, 2024                SMITH, KATZENSTEIN & JENKINS LLP

                                       */s/ Robert J. Katzenstein*
                                        Robert J. Katzenstein (No. 378)
Julie M. O'Dell (No. 6191)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
rjk@skjlaw.com
jmo@skjlaw.com

*Attorneys for Defendant ACE American Insurance Company*

OF COUNSEL

Alan Joaquin
Alexandra N. Kajari
WERNER AHARI MANGEL LLP
2112 Pennsylvania Avenue Northwest, Suite 200
Washington, D.C. 20037
(202) 599-1030
AJoaquin@wam.law
Akajari@wam.law

20