# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHEMONICS INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:24-cv-00817-RGA |
| | ) | |
| ACE AMERICAN INSURANCE | ) | **JURY TRIAL DEMANDED** |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ACE AMERICAN INSURANCE COMPANY'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)

OF COUNSEL:

Barry I. Buchman
Adrian Azer
Kathleen M. Repko
HAYNES BOONE, LLP
800 17th Street, N.W.
Suite 500
Washington, DC 20006
(202) 654-4500

Dated: October 30, 2024

Jennifer C. Wasson (No. 4933)
Carla M. Jones (No. 6046)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
jwasson@potteranderson.com
cjones@potteranderson.com

*Attorneys for Plaintiff Chemonics International, Inc.*

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

SUMMARY OF ARGUMENT ............................................................................1

CONCISE STATEMENT OF FACTS ....................................................................4

I.      Chemonics' Professional Services to USAID and Chemonics' Purchase of the ACE Policy to Provide Coverage for Management-Liability Claims ....................4

II.     The USAID Claim ........................................................................................6

III.    Chemonics Seeks Coverage from ACE and ACE Denies Its Coverage Obligations ..................................................................................................6

ARGUMENT ......................................................................................................6

I.      ACE Bears a Heavy Burden to Override Chemonics' Choice of Forum ...............6

II.     This Court and The Delaware Superior Court Repeatedly Have Denied Similar Motions Under Similar Circumstances ..................................................................7

III.    The Choice-Of-Law Factor from the Public Interest Factors Precludes Transfer ...9

        A.     ACE Has Not Met Its Heavy Burden to Prove That D.C. Law Will Apply ......................................................................................................9

               1.     The Delaware Supreme Court Has Held that Delaware Law Applies to    D&O Coverage Claims Akin to Those Presented Here ..............................................................................10

               2.     ACE Cannot Show That D.C. Law Conflicts on the Substantive Issues In Dispute; Thus, Delaware Law Applies ...........................11

IV.    The Remaining Public Interest Factors and the Private-Interest Factors Weigh Against Transfer ......................................................................................12

        A.     The Remaining Public-Interest Factors Weigh Against Transfer .............12

               1.     ACE Fails to Show That Transfer Would Make This Case Easier and Less Expensive to Litigate ....................................................12

i

2.    ACE Fails to Establish That Court Congestion Weighs in Favor of Transfer ........................................................................................14

3.    ACE Has Not Proven That D.C. Has An Overriding "Local Interest" in Deciding this Coverage Dispute ................................14

4.    D.C. Has No Public Policy Interest In This Dispute.....................15

B.    The Private-Interest Factors Likewise Weigh Heavily Against Transfer ..15

1.    Plaintiffs' Forum Choice is The Paramount Consideration...........15

2.    ACE Has Not Proven That Its Choice to Litigate in the D.D.C. Outweighs the Paramount Consideration of Chemonics' Choice of This Court ....................................................................................18

3.    ACE Has Not Shown That the Nature of the USAID Claim Justifies Transfer ............................................................................19

4.    ACE Has Not Proven That D.C. is The More Convenient Forum for (1) the Parties, (2) the Witnesses, and/or (3) the Use of Records, To Overcome The Presumption Against Transfer ..........19

CONCLUSION ........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ace Am. Ins. Co. v. Walmart Inc.*,
2023 WL 3318323 (Del. Super. Ct. May 9, 2023) ....................................................2

*Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*,
2013 WL 5461876 (D. Del. Sept. 30, 2013)...........................................................18

*AR Capital, LLC v. XL Specialty Insurance Company*,
2019 WL 1932061 (Del. Super. Ct. Apr. 25, 2019).................................................13

*Arch Ins. Co. v. Murdock*,
2019 WL 2005750 (Del. Super. Ct. May 7, 2019) ..................................................12

*Asal v. Mina*,
247 A. 3d 260 (D.C. App. 2021).............................................................................12

*Bristol-Myers Squibb Co. v. Merck & Co., Inc.*,
2015 WL 13683600 (D. Del. Apr. 29, 2015)................................................. *passim*

*Cassirer v. Thyssen-Bornemisza Collection Foundation*,
596 U.S. 107 (2022)................................................................................................11

*Ceradyne, Inc. v. RLI Ins. Co.*,
2021 WL 3145171 (D. Del. July 26, 2021) ....................................................... 16-18

*Certain Underwriters at Lloyds Severally Subscribing Policy Number DP359504 v. Tyson Foods, Inc.*,
2008 WL 660485 (Del. Super. Ct. Mar. 7, 2008) ....................................................9

*CVR Refining, LP v. XL Specialty Ins. Co.*,
2021 WL 3523925 (Del. Super. Ct. Aug. 11, 2021).................................................19

*G-New, Inc. v. Endurance American Ins. Co.*,
2022 WL 4128608 (Del. Super. Ct. Sept. 12, 2022)................................................10

*Guaranteed Rate v. Ace Am. Ins. Co.*,
2022 WL 4088596 (Del. Super. Ct. Aug. 24, 2022).................................................9

*Hartford Fire Ins. Co. v. Encore Marketing Intern., Inc.*,
2011 WL 766587 (D. Del. Feb. 24, 2011) .................................................... *passim*

*IDT Corp. v. U.S. Specialty Ins. Co.*,
2019 WL 413692 (Del. Super. Ct. Jan. 31, 2019) ..................................................12

*Intellectual Ventures I LLC v. Altera Corp.*,
   842 F. Supp. 2d 744 (D. Del. 2012)..................................................................... *passim*

*Lagrone v. Am. Mortell Corp.*,
   2008 WL 4152677 (Del. Super. Ct. Sept. 4, 2008)..................................................11

*Laugelle v. Bell Helicopter Textron, Inc.*,
   2013 WL 5460164 (Del. Super. Ct. Oct. 1, 2013)....................................................11

*Linex Technologies, Inc. v. Hewlett-Packard Co.*,
   2013 WL 105323 (D. Del. Jan. 7, 2013)..................................................................20

*Mitel Networks Corp. v. Facebook, Inc.*,
   943 F. Supp. 2d 463 (D. Del. May 1, 2013) ...........................................................16

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. FedEx Corp.*,
   2023 WL 4623626 (Del. Super. Ct. July 18, 2023) .................................................11

*Paycom Software, Inc. v. Travelers Cas. and Sur. Co. of Am.*,
   2022 WL 1063845 (D. Del. Apr. 8, 2022) ...............................................................17

*Pfizer v. Arch Insurance Co.*,
   2019 WL 3306043 (Del. Super. Ct. July 23, 2019) ...........................................3, 11

*Pfizer v. Federal Ins. Co., et al.*,
   No. 1:18-cv-00251-GMS, Doc. 34 (D. Del. July 9, 2018) ...................................7, 8

*Rockwell Automation, Inc. v. EU Automation, Inc.*,
   2022 WL 15447159 (D. Del. Oct. 27, 2022) ...........................................................15

*RSUI Indem. Co. v. Murdock, et al.*,
   248 A.3d 887 (Del. 2021) ............................................................................. *passim*

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012)........................................................................20

*Stillwater Mining Co. v. National Union Fire Ins. Co. of Pittsburgh Pa*,
   289 A.3d 1274 (Del. 2023) .....................................................................................11

*Travelers v. CNH Industrial America, LLC*,
   191 A.3d 288 (Del. 2018) .......................................................................................11

*Trout Unlimited v. U.S. Dept. of Agriculture*,
   944 F. Supp. 13 (D.D.C. 1996)...............................................................................14

*Verizon Communications Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*,
   2019 WL 2517418 (Del. Super. Ct. Apr. 26, 2019)....................................... *passim*

iv

**STATUTES**

28 U.S.C. § 1404(a) .................................................................................................................1

Chemonics International, Inc. ("**Chemonics**") respectfully submits this Memorandum of Law in Opposition to the Motion to Transfer (the "**Motion**") submitted by Defendant ACE American Insurance Company ("**ACE**") (D.I. 9).

## NATURE AND STAGE OF THE PROCEEDINGS

After nearly three years of attempting to obtain insurance coverage from ACE, on July 15, 2024, Chemonics filed this action primarily to recover its defense costs incurred in a claim brought by the United States Agency for International Development ("**USAID**"). Chemonics filed in Delaware because: (1) Delaware is Chemonics' home state; (2) company employees reside and work in Delaware, including one who has worked on the underlying USAID project at issue;[1] and (3) Delaware law will apply to this dispute, given that Chemonics seeks coverage under an errors and omissions ("**E&O**") policy, which is a financial-lines insurance policy similar to a directors and officers ("**D&O**") policy. (D.I. 1).

On September 17, 2024, ACE filed a Motion to transfer this action to the United States District Court for the District of Columbia ("**D.D.C.**"). (D.I. 9). ACE argues, in large part, that the presence of Chemonics' headquarters and some witnesses in Washington, D.C. ("**D.C.**") requires transfer. ACE's argument ignores the focal point of a forum analysis in a financial-lines coverage case such as this one and misconstrues the public- and private-interest factors relevant to the transfer analysis.

## SUMMARY OF ARGUMENT

In evaluating a motion to transfer under 28 U.S.C. §1404(a), the Court conducts a multi-faceted factor analysis that includes a variety of public and private interests (the "*Jumara*

---

[1] *See* Declaration of Eric Marcotte in Support of Chemonics' Opposition to ACE's Motion to Transfer Venue ("Marcotte Declaration"), ¶ 3.

factors").[2]  Overlying all of these considerations is the heavy burden of proof placed on the party seeking transfer:  "[u]nless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail."  *See Hartford Fire Ins. Co. v. Encore Marketing Intern., Inc*., et al., 2011 WL 766587, at *2 (D. Del. Feb. 24, 2011) ("*Encore Marketing*").  In essence, ACE's motion to transfer rests on the false premise that because Chemonics is headquartered in Washington, D.C. and some witnesses are located there, transfer to the D.D.C. is appropriate.  ACE, however, fails to meet its heavy burden to overcome the presumption that Chemonics' choice of forum should prevail.

First, "[w]hile not dispositive, the court places significance on the plaintiff's choice of forum particularly where, as here, the plaintiff is organized under the laws of Delaware and both parties have a global reach."  *Bristol-Myers Squibb Co. v. Merck & Co., Inc.*, 2015 WL 13683600, at *1 n.1 (D. Del. Apr. 29, 2015) ("***Bristol-Myers***").  Chemonics is a Delaware corporation.  ACE is a Pennsylvania insurer with no meaningful connections to D.C.  ACE underwrites risks worldwide, including for Delaware insureds whose management activities are governed by Delaware law.  ACE is licensed with the Delaware Insurance Commissioner and subject to its authority and jurisdiction.  And ACE has repeatedly availed itself of the benefits of Delaware's courts to litigate its insurance disputes; it is frequently a party (and often a plaintiff) in Delaware coverage actions.[3]  ACE thus cannot reasonably complain about having to litigate here.  *See Verizon Communications Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 2019 WL 2517418 (Del. Super. Ct. Apr. 26, 2019) ("*Verizon*") (denying insurers' forum motion because, among other

---

[2] (D.I. 10, p. 7).

[3] *See, e.g., Ace Am. Ins. Co. v. Walmart Inc.*, 2023 WL 3318323 (Del. Super. Ct. May 9, 2023) (ACE American Insurance Company plaintiff in insurance coverage declaratory judgment action).

things, the policyholder was a Delaware corporation and the insurers previously litigated in Delaware).[4]

ACE likewise fails to carry its heavy burden to prove that the remaining public- and private-interest factors favor transfer.  Particularly relevant is that Delaware law likely will apply to the resolution of this coverage dispute.  The Delaware Supreme Court has held that Delaware law applies in D&O coverage cases involving Delaware-incorporated policyholders (such as Chemonics); specifically, Delaware is the "center of gravity" for disputes involving corporate governance and management issues for Delaware corporations.  *See RSUI Indem. Co. v. Murdock, et al.,* 248 A.3d 887, 900 (Del. 2021) ("***Murdock***").[5]

Similarly, here, although Chemonics seeks coverage under an E&O rather than D&O Policy, its defense costs coverage claims result from an underlying claim of management liability.  The claim that USAID has pursued against Chemonics (the "**USAID Claim**") alleges that Chemonics purportedly failed to properly manage and oversee its vendors, resulting in a breach of its duties to the U.S. government.[6]  In that regard, E&O policies such as the policy here are a type of financial-lines policy similar to D&O insurance policies.[7]  Thus, not surprisingly, Chemonics procured both its primary E&O policy at issue and its primary D&O coverage (for the same period) from Chubb, which is ACE's parent company.

---

[4] *See also Encore Marketing*, 2011 WL 766587, at *2-3 (plaintiff's choice of forum should prevail unless the balance is strongly in favor of transfer, and finding that there was no balance in favor of transfer because, among other things, defendants there, like Chemonics here, were Delaware corporations).

[5] *See Murdock,* 248 A.3d 887, 900-901 (Del. 2021); *see also Pfizer v. Arch Insurance Co*., 2019 WL 3306043 (Del. Super Ct. July 23, 2019).

[6] (D.I. 1)

[7] *See*, *e.g.*, Aon, Plc, Financial Lines and Professional Services (2024), https://www.aon.com/en/capabilities/risk-transfer/financial-lines-and-professional-services; Chubb, Financial and Professional Lines (2024), https://www.chubb.com/pr-en/business/financial-professional-lines.html.

The other public- and private-interest factors also weigh in favor of denying transfer. Chemonics' choice to litigate in its home state was both legitimate and rational, and that choice is entitled to "paramount consideration" under the *Jumara* transfer analysis.[8] First, Delaware is Chemonics' state of incorporation, and it is being denied insurance coverage for acts it allegedly committed in connection with management responsibilities. Second, Delaware is closer geographically than D.C. for ACE, which is located in Philadelphia. Third, ACE provides no reasonable basis for its argument that it will be difficult to access what it calls "not yet confirmed" non-party witnesses if this case remains in Delaware. On the contrary, as the court noted in *Verizon*, "**witnesses may easily travel [from New York] to Delaware by train or car**." *See Verizon*, 2019 WL 2517418, at *7 (emphasis added). Fourth, ACE references documents and records that cannot be produced in Delaware but also concedes and acknowledges the exchange of information is a non-factor given modern technology.

In short, as this Court has noted, "[u]nless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail."[9] As ACE has failed to meet its heavy burden, Chemonics' choice to bring this suit in its home state should prevail.

## CONCISE STATEMENT OF FACTS

### I.  Chemonics' Professional Services to USAID and Chemonics' Purchase of the ACE Policy to Provide Coverage for Management-Liability Claims

Chemonics provides global supply chain management services to USAID, and as part of those services, Chemonics manages and oversees a network of local subcontractors for the handling of various healthcare commodities and related waste products.[10]  While Chemonics'

---

[8] *Encore Marketing*, 2011 WL 766587, at *2.
[9] *Encore Marketing*, 2011 WL 766587, at *2.
[10] (D.I., ¶¶ 31–32).

headquarters is located in D.C., two Chemonics employees reside and work in Delaware, one of whom *has worked on the underlying USAID project at issue*.[11]

Chemonics purchased an E&O insurance policy from ACE to insure against claims that it improperly performed its services to USAID (the "**Policy**").[12]   The Policy covers amounts Chemonics is obligated to pay by reason of, among other things, negligence, errors or omissions *in the performance of management and related services*.[13]

The Policy requires that ACE pay Chemonics for "Damages and Claims Expenses…by reasons of a Wrongful Act in the performance of or failure to perform Professional Services..."[14] A Wrongful Act is "any [] negligent act, [] committed by the Insured [] in the performance of or failure to perform Professional Services."[15]   Professional Services is defined as, among other things, "management, operations…performance monitoring and related services for others for compensation."[16]   These Policy provisions provide coverage for the actions and omissions of Chemonics management team in a manner akin to the way that a D&O policy would cover the acts or omissions of directors and officers of a company.

The Policy also requires that ACE pay Defense Costs and "defend any covered Claim brought against [Chemonics]…"[17]   The Policy does not contain a choice-of-law provision.

---

[11] *See* Marcotte Declaration, ⁋ 3.
[12] (D.I. 1, ⁋⁋ 15–16).
[13] (D.I. 1, ⁋⁋ 18–23).
[14] (D.I. 1, ⁋ 18).
[15] (D.I. 1, ⁋ 22).
[16] (D.I. 1, ⁋ 23).
[17] (D.I. 1, ⁋ 19).

## II.    The USAID Claim

In July 2021, the United States Department of Justice (**"DOJ"**) informed Chemonics that it was opening a False Claims Act matter on behalf of USAID regarding an overbilling issue stemming from work performed by one of Chemonics' subcontractors in Nigeria – Zenith Carex ("**Zenith**").[18]  Specifically, the DOJ, on behalf of USAID, has alleged that Chemonics failed to detect and prevent Zenith's overcharging activity.[19]  The USAID Claim was initiated by the United States Attorney's Office for the Western District of *Missouri*, and that office has remained involved in handling the claim.[20]

## III.    Chemonics Seeks Coverage from ACE and ACE Denies Its Coverage Obligations

Chemonics timely notified ACE of the USAID Claim,[21] but ACE has repeatedly denied its coverage obligations, contending most recently that: (1) the USAID Claim does not constitute covered "Damages" under Endorsement No. 5 of the Policy; and (2) Chemonics purportedly breached the Policy's Consent to Settle Provisions.[22]  Chemonics therefore commenced this action in Delaware seeking primarily to compel reimbursement of its defense costs for the USAID Claim.

## <u>ARGUMENT</u>

## I.    <u>ACE Bears a Heavy Burden to Override Chemonics' Choice of Forum</u>

Although ACE correctly lists the factors that courts consider in deciding a transfer motion, ACE fails to acknowledge its extremely heavy burden to establish that transfer is appropriate:

> The burden of establishing the need to transfer rests with the movant 'to establish that the balance of convenience of the parties and witnesses *strongly* favors the

---

[18] (D.I. 1, ¶ 53). The USAID Claim followed a similar claim made by the Global Fund, to whom Chemonics also provided services through Zenith. (D.I. 1, ¶¶ 36–39).

[19] (D.I. 1).

[20] *See* letter dated July 19, 2021, from United States Attorney's Office for the Western District of Missouri, to Eric J. Marcotte, Legal Counsel, Chemonics ("**July 2021 DOJ Letter**"), attached as <u>Exhibit A</u>.

[21] (D.I. 1, ¶ 54).

[22] (D.I. 1, ¶¶ 56–60, 73).

defendants.' 'Unless the balance is *strongly* in favor of a transfer, the plaintiff's choice of forum should prevail.' The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason . . . [Regardless of a plaintiff's 'home turf',] the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.'[23]

Further, Chemonics' state of incorporation – Delaware – is considered its "home turf," and, accordingly, its choice of Delaware as a forum is entitled to paramount consideration, even though its headquarters are elsewhere.[24] And as a defendant with national operations, ACE "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations."[25]

## II. This Court and The Delaware Superior Court Repeatedly Have Denied Similar Motions Under Similar Circumstances

Both this Court and the Delaware Superior Court have denied similar motions to transfer. The courts have given significant deference to the plaintiff's choice of forum, especially where, as here, the plaintiff is incorporated in Delaware. *See Bristol-Myers*, 2015 WL 13683600, at *1 n.1; *Pfizer v. Federal Ins. Co., et al.,* No. 1:18-cv-00251-GMS, Doc. 34 (D. Del. July 9, 2018) (attached hereto as Exhibit 1); *Encore Marketing*, 2011 WL 766587 (D. Del. Feb. 24, 2011); *Verizon*, 2019 WL 2517418.

---

[23] *Encore Marketing*, 2011 WL 766587, at *2 (D. Del. Feb. 24, 2011) (internal citations omitted) (emphasis added). Chemonics does not dispute that the D.D.C. has subject matter jurisdiction over the claims and personal jurisdiction over the parties. However, for the same reasons set forth below with respect to the public- and private-interest factors, the D.D.C. is not the proper venue for this action. (*See* D.I. 10, pp. 7-9.)

[24] *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012) ("*Altera*") (*citing Praxair, Inc. v. ATMI, Inc.,* 2004 WL 883395, at *1-2 (D. Del. Apr. 20, 2004) (Delaware is "home turf" as long as company is incorporated in Delaware, regardless of location of principal place of business).

[25] *Id.* at 751 ("Unless the defendant 'is truly regional in character' – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is often inappropriate").

In *Bristol-Myers,*[26] this Court denied the defendant's motion to transfer to the District of New Jersey, in large part because the plaintiff was a Delaware corporation. "[T]he court place[d] significance on the plaintiff's choice of forum particularly where, as here, the plaintiff is organized under the laws of Delaware and both parties have a global reach."[27] The Court also relied on facts similar to those here, including that: (i) the "defendant is a corporation with global reach and annual revenues in the billions;" (ii) defendant could not show that New Jersey was a more convenient forum based on proximity of witnesses or documents, and (iii) statistics show that this Court was less congested *when considering the time from filing to trial.*[28]  *See also Pfizer v. Federal Ins. Co., et al.,* No. 1:18-cv-00251-GMS, Doc. 34 (D. Del. July 9, 2018) (denying motion to transfer, to the Southern District of New York, a case filed here by Delaware corporation).

Similarly, in *Encore Marketing*, this Court rejected a defendant's effort to transfer an insurance dispute from Delaware to California, even though California was the location both of the defendant's headquarters and of employees with relevant information.[29] This Court reiterated that a plaintiff's choice of forum should prevail "[u]nless the balance is *strongly* in favor of a transfer.[30] The "balance" there did not strongly favor transfer, because "defendants, as Delaware corporations, have no reason to complain about being sued in Delaware."[31]

Finally, in *Verizon*, the Delaware Superior Court reached a similar conclusion in determining a motion to dismiss for *forum non conveniens*.  The court denied the insurers' motion

---

[26] *Bristol-Myers*, 2015 WL 13683600, at *1 n.1.

[27] *Id*.

[28] *Id*.

[29] *Encore Marketing*, 2011 WL 766587 (D. Del. Feb. 24, 2011).

[30] *Id*., at *2 (emphasis added).

[31] *Id*., at *3.

to dismiss the case in favor of the New York action because, among other things, the policyholder was a Delaware corporation and the insurers previously litigated coverage cases in Delaware.

Consistent with *Bristol-Myers, Pfizer*, *Encore Marketing,* and *Verizon*, ACE cannot complain that its policyholder filed suit in its home jurisdiction, in which ACE is licensed to do business and routinely writes Delaware-based risks.  That is particularly true given that ACE has no meaningful connection to D.C and ACE itself regularly litigates in Delaware, including as a plaintiff.[32]  Thus, this Court should deny ACE's Motion.

## III.     The Choice-Of-Law Factor from the Public Interest Factors Precludes Transfer

### A.     ACE Has Not Met Its Heavy Burden to Prove That D.C. Law Will Apply

ACE's Motion separately fails because ACE has not shown that D.C. law, rather than Delaware law, will apply here.  That is particularly problematic for ACE because the choice-of-law public-interest factor informs other public-interest factors, such as the ones regarding the "local interests" and "public policy" of the two fora.

ACE ignores (1) the likelihood that Delaware law applies because this case involves a management-liability coverage claim akin to a D&O coverage claim; and (2) that even if there is any question in that regard, that question will be resolved under Delaware's choice of law rules (even in the D.D.C.), which require ACE to show a conflict between D.C. and Delaware law, something ACE has not done.

---

[32]  *See, e.g.,* C*ertain Underwriters at Lloyds Severally Subscribing Policy Number DP359504 v. Tyson Foods, Inc.*, 2008 WL 660485 (Del. Super. Ct. Mar. 7, 2008); *Guaranteed Rate v. Ace Am. Ins. Co*., 2022 WL 4088596 (Del. Super. Ct. Aug. 24, 2022) (ACE American Insurance Company defendant in insurance coverage action).

      1.     <u>The Delaware Supreme Court Has Held that Delaware Law Applies to D&O<br>Coverage Claims Akin to Those Presented Here</u>

The Delaware Supreme Court has held that Delaware law applies to D&O insurance claims made by Delaware companies, and those claims are akin to the E&O insurance claims here. As such, Delaware law should apply to the resolution of Chemonics' coverage claim.[33]

In *Murdock*, the insurers argued California law applied because the D&O policies were issued in California and the policyholder was headquartered in California, even though the policyholder was incorporated in Delaware.[34] The Delaware Supreme Court rejected that argument and concluded that Delaware law applied. The *Murdock* court held that Delaware law applied because "'[w]hen the insured risk is the directors' and officers' 'honesty and fidelity' to the corporation'—and we would add to its stockholders and investors — 'and the choice of law is between headquarters or the state of incorporation, the state of incorporation has the most significant interest.'"[35]

As in *Murdock*, this Court should consider the type of coverage at issue—here, financial-lines coverage similar to the D&O coverage at issue in *Murdock*. Here, per *Murdock*, Delaware law applies because the USAID Claim raises similar issues of fidelity and management responsibility that D&O claims implicate. Indeed, brokers and insurers sometimes even market D&O and E&O coverage together as two parts of a larger category of coverage known as "financial

---

[33] *Murdock*, 248 A.3d at 900-901; *see also G-New, Inc. v. Endurance American Ins. Co.*, 2022 WL 4128608, at *7 (Del. Super. Ct. Sept. 12, 2022).
[34] *Id*.
[35] *Id*., at *900.

lines" coverage – separate from other coverage lines such as general liability.[36]  Thus, Delaware

is the "center of gravity."[37]  And Delaware law thus should apply.[38]

> ## 2. ACE Cannot Show That D.C. Law Conflicts on the Substantive Issues In Dispute; Thus, Delaware Law Applies

Even if there is uncertainty about whether Delaware applies, that uncertainty does not help

ACE because it has failed to meet its heavy burden to show that D.C. law unquestionably will

apply.  First, to determine the governing law under this factor, the Court sitting in diversity must

apply Delaware's choice of law standards.  *See Cassirer v. Thyssen-Bornemisza Collection*

*Foundation*, 596 U.S. 107, 115 (2022).  Under Delaware's choice of law analysis, the court applies

Delaware law unless there is a "true conflict" with the competing jurisdiction's law; if the other

state's law is silent on the issue, Delaware also applies its own law.[39]

Here, ACE has not proven that D.C. and Delaware law conflict on the issues in dispute.

First, regarding the "Damages" issue, D.C. has not addressed the definition of "Damages" in a

context such as this one and, therefore, the laws of Delaware and D.C. do not conflict.  Second,

---

[36] *See supra* footnote 7.

[37] *Id.*; *see also* S*tillwater Mining Co. v. National Union Fire Ins. Co. of Pittsburgh Pa*, 289 A.3d 1274, 1285 (Del. 2023) (following *Murdock* and holding "emphasis on physical location underrates the significance of [the company's] status as a Delaware corporation—an entity formed and existing by virtue of the Delaware Constitution and the Delaware General Corporation Law"); *Pfizer, Inc.*, 2019 WL 3306043, at *8.

[38] ACE's reliance on *FedEx* and *Travelers* to contend that D.C. law will apply is misguided because those cases do not involve management liability insurance coverage such as D&O and E&O policies. (D.I. 10, pp. 17-20). Instead, both the *FedEx* and *Travelers* courts addressed which law to apply to "corporate-wide" or "comprehensive" general liability insurance programs that address risks across corporate operations. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. FedEx Corp.*, 2023 WL 4623626 (Del. Super. Ct. July 18, 2023) ("*FedEx*"); *Travelers v. CNH Industrial America, LLC*, 191 A.3d 288 (Del. 2018).

[39] *See Laugelle v. Bell Helicopter Textron, Inc*., 2013 WL 5460164, at *2 (Del. Super. Ct. Oct. 1, 2013) ("[I]t must be first determined that there is an actual—rather than no or merely a 'false'—conflict. If there is no actual conflict, 'the Court should avoid the choice-of-law analysis altogether.'"); *see also Lagrone v. Am. Mortell Co*rp., 2008 WL 4152677, at *5 (Del. Super. Ct. Sept. 4, 2008) (same).

regarding the "Consent to Settle" issue, ACE has not proven that D.C. law disagrees with Delaware law, which requires ACE to show that it was prejudiced by any alleged failure of Chemonics to cooperate with ACE or to obtain its consent to settle with the DOJ.[40]  Because ACE has not proven that there is a conflict between Delaware law and D.C. law, Delaware law applies.[41]

## IV.    The Remaining Public Interest Factors and the Private-Interest Factors Weigh Against Transfer

### A.    The Remaining Public-Interest Factors Weigh Against Transfer[42]

#### 1.    ACE Fails to Show That Transfer Would Make This Case Easier and Less Expensive to Litigate

As noted above, as a defendant with national operations, ACE "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations."[43]  Indeed, "[u]nless the defendant 'is truly regional in character' – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is often inappropriate."[44]  ACE is a national insurer with over \$30B in assets;[45] it cannot show that there is any burden whatsoever in having to litigate in a jurisdiction located approximately 30 minutes from its headquarters.

---

[40] *Compare Arch Ins. Co. v. Murdock*, 2019 WL 2005750, at *10, *12 (Del. Super. Ct. May 7, 2019) (stating that the main purpose of a consent provision is to protect the insurer from prejudice) *with Asal v. Mina*, 247 A. 3d 260, 283 (D.C. App. 2021) (cooperation clause may bar coverage only if insurer can prove that the breach was prejudicial to it).

[41] *See IDT Corp. v. U.S. Specialty Ins. Co.,* 2019 WL 413692, at *6 (Del. Super. Ct. Jan. 31, 2019) (noting there was no conflict of laws in the case and that a Delaware court should therefore "avoid a choice-of-law analysis altogether," but then noting "one more thing" – "Delaware courts have consistently held" that Delaware law should apply to a Delaware corporation's D&O policy).

[42] The enforceability of judgment public interest factor does not weigh in favor or against transfer. Indeed, the parties agree that both Delaware and the D.D.C. could equally enforce any judgment in this case.

[43] *Id.* at 751 ("Unless the defendant 'is truly regional in character' – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is often inappropriate").

[44] *Altera Corp.*, 842 F. Supp. 2d at 751.

[45] Weiss Ratings, ACE American Insurance Co., 2024, https://weissratings.com/en/insurer/P22667

ACE also has failed to prove that litigating this action in the D.D.C. would be more efficient merely because some "not yet confirmed" third-party witnesses may be there.[46]   The court in *Verizon* rejected a similar insurer argument.  In concluding that Delaware was the proper venue, the court determined that, among other things, **the presence of witnesses and evidence in New York did not outweigh Delaware's interest, as a "witness may easily travel to Delaware by train or car" and transporting documents is not a burden with modern technology**.[47]   And ACE cannot show that the relevant witnesses are located exclusively in D.C.; to the contrary, relevant DOJ personnel are located in the Western District of Missouri, and a Chemonics employee who has worked on the underlying USAID project lives and works *in Delaware*.[48]

Similarly, here, there is equal access, whether in Delaware or D.C., to the electronic documents at issue in this case (as ACE concedes) and to witnesses likely to be called for deposition and at trial.  Indeed, Delaware is at least equally convenient for all parties.  ACE is located in Philadelphia and thus Delaware is actually closer to ACE for purposes of traveling for depositions and attending trial.  And, thus not surprisingly, ACE frequently litigates in Delaware courts, as noted above.

---

[46] *See AR Capital, LLC v. XL Specialty Insurance Company*, 2019 WL 1932061, at *3, 8 (Del. Super. Ct. Apr. 25, 2019) (stating the "movant seeking dismissal has the burden to prove that litigating in Delaware would cause overwhelming hardship" and denying a motion to stay the case in Delaware because of neutral findings on ease of access to proof, availability of compulsory process for witnesses, other practical considerations, and applicability of Delaware law, and because pendency of a similar action is not controlling as insurers did not show that the *Cryo-Maid* factors "overwhelmingly [] favor [] dismissal").

[47] *Verizon*, 2019 WL 2517418, at *6-7 (emphasis added).

[48] *See* July 2021 DOJ Letter (Ex. A); Marcotte Declaration, ¶ 3.

2.      ACE Fails to Establish That Court Congestion Weighs in Favor of Transfer

Although ACE is correct that this Court has more pending cases than does the D.D.C., that is not dispositive of the "court congestion" factor, because cases actually take much longer to resolve in the D.D.C. than they do here.  Indeed, in *Bristol-Myers*, in denying transfer, this Court was "slightly persuaded by those statistics offered by BMS showing the time from filing to [trial] in the District of New Jersey is more than in the District of Delaware."[49]

The D.D.C.'s median time from filing to trial in civil cases was 52.4 months while this Court's was 32.9 months.[50]  Thus, the median time to trial in civil cases is nearly *two years* longer in the D.D.C. than in the District of Delaware.[51]  This fact weighs against transfer as a practical matter, and as a matter of fairness to Chemonics the plaintiff, which has had its defense costs claim against ACE outstanding for more than two years  now and is eager to have this dispute resolved promptly.  Thus, ACE has not proven that transfer is warranted based on this factor.

3.      ACE Has Not Proven That D.C. Has An Overriding "Local Interest" in Deciding this Coverage Dispute

ACE's contention that D.C. has an overriding interest in deciding this coverage action because the underlying USAID Claim is based there is misplaced. Rather, as noted, Chemonics is a Delaware incorporated entity, and one of the Chemonics employees involved in the underlying

---

[49] *See Bristol-Myers*, 2015 WL 13683600, at *1 n.1.

[50] *See* U.S. District Courts – National Judicial Caseload Profile – During the 12-Month Periods Ending June 30, 2019, through June 30, 2024, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2024.pdf.

[51] *See Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp. 13, 19 (D.D.C. 1996) ("[t]he relative docket congestion *and potential speed of resolution* with respect to both the transferor and transferee courts are also appropriate factors to consider.") (emphasis added).  ACE cannot reasonably claim that this "time to trial" difference is irrelevant because ACE believes this case will resolve before trial, e.g., on summary judgment.  ACE cannot credibly presume the outcome of the merits to negate the "time to trial" factor.

USAID project at issue is located in Delaware.[52]  Further, the DOJ has handled the USAID Claim, in part, through the office of the U.S. Attorney for the Western District of Missouri.[53]

Indeed, D.C. citizens have no overriding interest in a case involving (1) a Delaware corporation, (2) the performance of professional services in Africa, or (3) the defense of claims initiated from Missouri. And, as noted earlier, Delaware is the "center of gravity" with respect to this management liability dispute given that Chemonics is a Delaware corporation.

### 4.    D.C. Has No Public Policy Interest In This Dispute

For the same reasons as those stated above with regard to Delaware's interests in this action, ACE's argument that D.C. has a stronger public policy interest than Delaware fails.[54]  As explained *supra*, Chemonics is a Delaware corporation and ACE is a Pennsylvania corporation. There is a strong public policy that management liability policies issued to Delaware corporations, such as the Policy here, are subject to determinations by Delaware courts pursuant to Delaware law.[55]  This factor weighs against transfer.

### B.    The Private-Interest Factors Likewise Weigh Heavily Against Transfer

### 1.    Plaintiffs' Forum Choice is The Paramount Consideration

As explained above, Chemonics' choice of forum receives "paramount consideration" in determining the proper forum.[56]  ACE argues that the Court should give less weight to Chemonics' choice of forum because of Chemonics' lack of physical connection to Delaware.  However,

---

[52] *See* Marcotte Declaration, ¶ 3.
[53] *See* July 2021 DOJ Letter (Ex. A).
[54] (D.I. 10, p. 17).
[55] *See Altera*, 842 F. Supp. 2d at 760.
[56] *Id*.; *see also Bristol-Myers*, 2015 WL 13683600, at *1 n.1 ("While not dispositive, the court places significance on the plaintiffs' choice of forum particularly where, as here, the plaintiff is organized under the laws of Delaware and both parties have a global reach."); *Rockwell Automation, Inc. v. EU Automation, Inc*., 2022 WL 15447159, at *3 (D. Del. Oct. 27, 2022).

Chemonics' state of incorporation – Delaware – is part of Chemonics' 'home turf,' and, accordingly, Chemonics' choice of Delaware as a litigation forum is entitled to paramount consideration, even though Chemonics' headquarters are elsewhere.[57]

ACE's cases on this point are distinguishable. For example, in *Mitel Networks Corp. v. Facebook, Inc.*, the Court considered defendant's argument that Mitel Network, Corp. added its Delaware subsidiary Mitel (Delaware), Inc. solely for jurisdictional purposes due to its incorporation in Delaware, and therefore held that Mitel Network's forum selection was not entitled to paramount consideration.[58] Indeed, the Court agreed with defendant's assertion that Mitel Network, not Mitel (Delaware), was the real party in interest.[59] This issue does not exist here because Chemonics, not a subsidiary with no real interest in this case, is the Delaware incorporated Plaintiff.

Similarly, *Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171 (D. Del. July 26, 2021) is also distinguishable. First, the discussion regarding which law governed turned on whether choice-of-law language in an ADR provision applied in the court case.[60] The Court determined that Delaware did not apply because the ADR provision did not apply to judicial proceedings.[61] By contrast, here, as explained in Section II.B. *supra*, Delaware law applies based on the fact that this is a management liability coverage dispute, and *Murdoch* requires the application of Delaware law to such claims. Second, *Ceradyne* involved dueling cases filed by the respective parties in Delaware

---

[57] *Altera*, 842 F. Supp. 2d at 760 (*citing Praxair, Inc. v. ATMI, Inc.,* 2004 WL 883395, at *1–2 (D. Del. Apr. 20, 2004) (Delaware is "home turf" as long as company is incorporated in Delaware, regardless of location of principal place of business).
[58] 943 F. Supp. 2d 463, 469-470.
[59] *Id*. at 470.
[60] *Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *9 (D. Del. July 26, 2021).
[61] *Id*.

and the Central District of California.[62]  Because there was a pending case in California, the Court was more inclined to transfer to California to promote judicial efficiency.[63]  Third, the *only* connection to Delaware was Ceradyne's incorporation in Delaware.[64]  Here, however, two Chemonics employees are located in Delaware, one of whom has worked on the USAID project at issue.[65]  Fourth, as ACE acknowledges, the underlying claim here is not being addressed solely by DOJ representatives located in D.C.; rather, DOJ attorneys in the Western District of Missouri have also handled the USAID Claim.[66]

This case also is different than *Paycom Software, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 2022 WL 1063845, at *7 (D. Del. Apr. 8, 2022). There, the Court could not determine "to what jurisdiction Delaware's choice-of-law test would point" because "[t]he parties have not briefed how Delaware's most significant relationship test would apply…" *Id*., at *7. In contrast, as explained in Section II.B. *supra*, Delaware law applies here and, at a minimum, ACE has not sustained its burden to show that it does not.  Moreover, in *Paycom*, there was a much greater distance between the policyholder's Oklahoma headquarters and Delaware, which informed the analysis of convenience and efficiency.  *Id*. at *4. This is not a concern here, because, as discussed, Delaware is a short train ride away from *both* Chemonics' *and* ACE's headquarters. Further, the Court in *Paycom* put great emphasis on the court-congestion factor.  The Court determined that this Court was far more congested than the district court in Oklahoma, and noted that there were

---

[62] *Id*., at *8.
[63] *Id*., at *7.
[64] *Id*.
[65] *See* Marcotte Declaration, ⁋ 3.
[66] (D.I. 10, p. 4).

judicial vacancies in this Court that compounded that issue. *Id*. In contrast, here, this Court now does not have any judicial vacancies, and it gets cases to trial faster than the D.D.C.[67]

Finally, *Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, 2013 WL 5461876 (D. Del. Sept. 30, 2013) ("*Andrews*"), is distinguishable, as well. First, akin to *Mitel*, there were two plaintiffs/policyholders, and the Court emphasized that Delaware was the "home turf" of only "one, but not both, of the Plaintiffs." *See id*. at *2. Second, the other plaintiff was "a California corporation," and both "Plaintiffs have their principal places of business in California[.]" *See id*. at *2-3. So, the co-plaintiff was *both* incorporated *and* headquartered in the transferee jurisdiction. Third, the defendant-insurer was incorporated in North Dakota and headquartered in Connecticut, much further than the roughly 30-minute drive that separates ACE's location (Philadelphia) from this Court. Finally, given the referenced California contacts, the Court believed that California might have an interest in the enforceability of an endorsement allowing coverage for punitive damages given the Court's view that California law precluded coverage for such damages; ACE has not shown any such conflict between Delaware and D.C. law here.

> ## 2.    ACE Has Not Proven That Its Choice to Litigate in the D.D.C. Outweighs the Paramount Consideration of Chemonics' Choice of This Court

"Under Third Circuit law, [a defendant's] preference for an alternative forum is not given the same weight as Plaintiff's preference."[68] Based on the ruling in *Altera*, which focused on the defendants' multiple contracts with the proposed transferee district, ACE has no legitimate reason

---

[67] *See* footnote 50 *supra*; *see also* United States District Courts – Current Judicial Vacancies (last updated 10/24/2024), available at https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies.

[68] *Altera*, 842 F. Supp. 2d at 755 (holding that defendants had legitimate reasons for their preference for another forum because (i) *both parties* were headquartered in that other forum, (ii) defendants' offices were located in that forum, (iii) the majority of defendants' documents and witnesses were located in that forum, and (iv) third party witnesses were located in that forum). As noted, ACE does not have those connections to D.C. here.

for seeking transfer to the D.D.C. Unlike the defendants in *Altera*, ACE has no meaningful connection to D.C. ACE is headquartered in, and thus many of witnesses and documents are located in, *Philadelphia*.

       3.     Ace Has Not Shown That the Nature of the USAID Claim Justifies Transfer

The USAID Claim did <u>not</u> arise exclusively in D.C. First, it arose out of a Professional Services relationship between USAID and Chemonics. The Professional Services relationship with USAID is supported by a Chemonics employee located in Delaware.[69] And while the DOJ is based in D.C., the DOJ has handled the USAID Claim, in part, out of the U.S. Attorney's Office in the Western District of Missouri.

Second, for the reasons noted above, the fact that the underlying liability claim itself may have a connection to D.C. does not outweigh all the other factors pointing to Delaware.

       4.     ACE Has Not Proven That D.C. is The More Convenient Forum for (1) the Parties, (2) the Witnesses, and/or (3) the Use of Records, To Overcome The Presumption Against Transfer

As noted above, ACE has failed to prove that litigating this action in D.C. would be more convenient. In analyzing this factor, Delaware courts require that a defendant "show that the inconvenience and hardship are so profound that they 'overwhelm' the plaintiff's choice of forum.[70] ACE has not come close to making such a showing.

Indeed, in concluding that Delaware was the proper venue, the *Verizon* Court found, in part, that the presence of witnesses and evidence in New York did not outweigh Delaware's interest, as a "witness may easily travel to Delaware by train or car" and transporting documents

---

[69] *See* Declaration, ‖ 3.
[70] *CVR Refining, LP v. XL Specialty Ins. Co.,* 2021 WL 3523925, at *7 (Del. Super. Ct. Aug. 11, 2021).

is not a burden with modern technology.[71] The *Verizon* ruling similarly applies to a venue analysis between Delaware and D.C.

Delaware is a more convenient location for all parties. Chemonics waives any inconvenience to itself as a result of litigating in Delaware. ACE is headquartered in Philadelphia–closer to Delaware than D.C. for purposes of traveling for depositions and attending trial. Similarly, there is no inconvenience to ACE to litigate in Delaware, as evidenced by ACE's frequent litigation of other matters in Delaware.

Witnesses likely to be called for deposition and at trial in this case are equally accessible regardless of the forum of this action.[72] Similarly, as conceded by ACE, there is equal access, whether in Delaware or D.C., to the electronic documents at issue in this case.[73] Consequently, because it is ACE's burden to show transfer to the D.C. is a *more* convenient forum, which it has not done, these factors weigh *against* transfer.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny ACE's Motion to transfer this action to the United States District Court for the District of Columbia and maintain the action in this Court.

---

[71] *Verizon*, 2019 WL 2517418, at *6–7; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012) (citation omitted).

[72] In this regard, ACE's reliance on *Linex Technologies, Inc. v. Hewlett-Packard Co*., 2013 WL 105323, at *5 (D. Del. Jan. 7, 2013) is misplaced. Per *Linex*, ACE fails to demonstrate any potential witness unavailability as "mere distance" is insufficient to show potential for witness unavailability where the party also offered no explanation as to why their testimony would be necessary. *Linex*, 2013 WL 105323, at *5.

[73] *See, e.g., Bristol-Myers*, 2015 WL 13683600, at *1 n. 1 ("with regards to the location of books and records, Merck has not met its burden to show such materials could be produced in New Jersey and not Delaware…[therefore,] [t]his factor weighs against transfer").

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:   */s/ Jennifer C. Wasson*

Barry I. Buchman
Adrian Azer
Kathleen M. Repko
Haynes Boone, LLP
800 South 17th Street, N.W.
Suite 500
Washington, DC 20006
Telephone: (202) 654-4500
barry.buchman@haynesboone.com
kathleen.repko@haynesboone.com
adrian.azer@haynesboone.com

Jennifer C. Wasson (No. 4933)
Carla M. Jones (No. 6046)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Telephone: (302) 984-6000
jwasson@potteranderson.com
cjones@potteranderson.com

*Attorneys for Plaintiff Chemonics*
*International, Inc.*

Dated: October 30, 2024