**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHEMONICS INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ACE AMERICAN INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) | C.A. No. 1:24-cv-00817-RGA <br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff Chemonics International, Inc. ("**Chemonics**"), by and through its undersigned attorneys, for its Complaint against Defendant ACE American Insurance Company ("**ACE**"), states and alleges as follows:

**INTRODUCTION**

1.   This is an insurance coverage action in which Chemonics seeks both damages from ACE for breach of contract and declaratory relief pursuant to 28 USC § 2201. Chemonics brings this action based on ACE's failure and refusal to pay legal fees and expenses ("**Defense Costs**") that Chemonics has incurred while defending a claim made by the United States Agency for International Development ("**USAID**") through the United States Department of Justice ("**DOJ**") (the "**USAID Claim**"). This failure and refusal to pay violates ACE's coverage obligations under an insurance policy it sold to Chemonics.

2.   As discussed in detail below, the USAID Claim pertains to, among other things, alleged violations of the False Claims Act ("**FCA**"). It arises from overbilling by Chemonics' subcontractors, including Zenith Carex ("**Zenith**"), who, along with Chemonics, provided certain

services to USAID. Zenith also provided those services, with Chemonics, to an organization named "The Global Fund".

3. Chemonics already has incurred in excess of $7.6 million in Defense Costs in connection with the USAID Claim and seeks coverage for all such Defense Costs. Chemonics also seeks coverage for the $3,119,582.14 (the "**Underlying Settlement Amount**") that Chemonics recently agreed to pay to resolve the USAID Claim in a Settlement Agreement effective December 19, 2024 (the "**USAID Settlement**").

4. By the terms of its insurance policy, ACE is obligated to pay Defense Costs and the Underlying Settlement Amount.

5. ACE has not made any defense cost payments with respect to the USAID Claim, and indeed has expressly denied that it has any coverage obligations for the USAID Claim under its insurance policy. ACE has based its denial on two coverage defenses.

6. First, ACE incorrectly claims that Chemonics breached Sections I.B, IX.A and IX.F of the Policy (the "**Consent to Settle Provisions**") by making admissions of liability and damages and by moving forward with settlement discussions without ACE's consent. This argument is without merit because (i) although ACE argues that Chemonics made critical admissions regarding an earlier matter pursued by "The Global Fund" arising from related conduct by Zenith (the "**Global Fund Matter**"), Chemonics did not make the admissions asserted by ACE, and even if Chemonics did, the two matters, while involving the same subcontractor conduct, have distinct liability and damages issues, including a False Claims Act aspect absent from "The Global Fund" Matter; (ii) ACE waived the Consent to Settle Provisions, first by denying coverage for the factually-related Global Fund Matter before many of the purported Chemonics admissions and then by repeatedly denying coverage for the USAID Claim, and (iii) ACE must, but has not, shown

that it was prejudiced by the purported breach of the Consent to Settle Provisions including failing to show how it would have defended the USAID Claim differently to obtain a better outcome.

7. Second, ACE asserts that amounts Chemonics has paid and will pay in connection with the USAID Claim do not constitute covered Damages under Endorsement No. 5 of the Policy, which excludes coverage for "charges for goods and services." ACE's position is inapplicable to Defense Costs, and it also is contrary to applicable case law, which recognizes the potential for coverage where the basis of an underlying claim is that the insured purportedly breached its fiduciary duties and duty of care by not providing sufficient oversight. *See, e.g., Southern Africa Enterprise Dev. Fund v. Ironshore Spec. Ins. Co.*, 2023 WL 1927652 (D. Del. Feb. 10, 2023) ("*SAEDF*") (denying insurer's motion to dismiss).[1] Despite being on notice of the USAID Claim since September 2021, ACE raised this coverage defense for the first time in August 2023, nearly two years later. Before that, ACE had denied coverage based on an exclusion regarding claims brought by Government agencies (the "**Government Agency Claim Exclusion**"), even though that exclusion has an exception that allows coverage for claims by Government agencies to whom Chemonics provides Professional Services, such as USAID here. ACE withdrew that defense in August 2023 when it asserted its latest reason for failing to honor its contractual obligation.

8. Chemonics respectfully requests that this Court: (i) award damages for breach of contract based upon ACE's failure to pay Defense Costs already incurred, and (ii) declare the obligations of ACE to pay Defense Costs and the Underlying Settlement Amount.

---

[1] Although the Court in *SAEDF* issued a subsequent summary judgment decision in September 2024 that ruled in favor of the insurer, the Court did so based on a factual record that is very different from the one that already exists in this case. This distinction will become only more apparent as discovery progresses here.

## THE PARTIES

9. Plaintiff Chemonics is a global development firm that is organized under the laws of the State of Delaware with its principal place of business in Washington, D.C.

10. Upon information and belief, Defendant ACE is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in the State of Pennsylvania.

## JURISDICTION

11. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1332 and 2201 because there is complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees and costs.

12. This Court has personal jurisdiction over ACE because, upon information and belief, ACE:

   a. is a licensed insurer authorized to do business in Delaware;

   b. regularly solicits and conducts business in Delaware;

   c. routinely contracts to insure risks located in Delaware, including under policies issued to Plaintiff, a Delaware insured; and/or

   d. maintains more than minimum contacts in this jurisdiction.

13. This action is properly brought in this judicial district under 28 U.S.C. § 1391(b)(3) because, among other reasons,

   a. This action involves financial-lines insurance issued to Chemonics, an entity organized under the laws of Delaware;

   b. Chemonics assessed its needs for financial-lines insurance coverage, including the coverage at issue here, with reference to Delaware law; and

c. ACE is (i) licensed or authorized to do business in Delaware; (ii) has contracted to insure risks located in Delaware; and (iii) has, within the relevant time periods, transacted business within Delaware.

## BACKGROUND

## THE POLICY

14. ACE sold Chemonics an insurance policy with Policy Number EON G27556346 005 and a policy period of April 15, 2019 through April 15, 2020 (the "**Policy**").

15. The Policy Limit of Liability is $10 million each Claim and, in the Aggregate, subject to a $250,000 each Claim retention.

16. Chemonics is the "Named Insured" under the Policy. "**Insured**" is defined to include, among other things, "the Named Insured." Policy Sections II.I. and K.

17. The Policy obligates ACE to:

> "pay on behalf of the Insured all sums in excess of the Retention that the Insured shall become legally obligated to pay as Damages and Claims Expenses, including those Assumed Under Contract, because of a Claim first made against the Insured during the Policy Period by reason of a Wrongful Act in the performance of or failure to perform Professional Services by the Insured or by any other person or entity for whom the Insured is legally liable."

Policy Section I.A. as amended by Endorsement No. 5.

18. The Policy also obligates ACE to "defend any covered Claim brought against the Insured even if the Claim is groundless, false or fraudulent."

Policy Section I.B.

19. The Policy defines a "**Claim**" as "a written demand for money, including any civil proceeding against the Insured for a Wrongful Act, in the performance of or failure to perform Professional Services." Policy Section II.C., as amended by Endorsements Nos. 5 and 10.

5

20. The Policy defines "**Claims Expenses**" as, among other things, "reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by [ACE], or by the Insured with [ACE]'s prior written consent, in the investigation and defense of covered Claims." Policy Section II.D.

21. "**Wrongful Act**" is defined as

> "any actual or alleged negligent act, error, omission, misstatement, misleading statement, Personal Injury, Media Injury, neglect or breach of duty by the Insured in their capacity as such or by any other person or entity for whom the Insured is legally liable..."

Policy Section II.T, as amended by Endorsement No. 5.

22. "**Professional Services**" is defined to mean "those services specified in Item 7. of the Declarations and performed for others for a fee by an Insured or by any person or entity for whom the Insured is legally liable…" Item 7 of the Declarations includes as "Professional Services"

> "management, operations, marketing, logistics consulting, technical assistance, research, training, special expertise in communications, grants management procurement, performance monitoring and related services for others for compensation."

Policy Section II.P, as amended by Endorsement No. 5, Section 2.d; Policy Declarations, Item 7.

23. The Policy defines Damages as:

> "any compensatory amount which the Insured becomes legally obligated to pay on account of a covered Claim, including judgments, awards [and] settlements . . . All settlements must be negotiated and agreed upon with the prior written consent of the Company."

Policy Section II.F., as amended by Endorsements Nos. 5 and 10.

24. The USAID Claim constitutes a "Claim."

25. Chemonics' Defense Costs of over $7.6 million, to date, constitute Claims Expenses.

6

26. Chemonics has satisfied the $250,000.00 per claim retention.

27. The Policy's "Notice" provision provides that Chemonics shall "give to [ACE] written notice of any Claim as soon as practicable…" Policy Section VI.1. Further,

> "[i]f, during the Policy Period, any Insured becomes aware of any specific Wrongful Act which may reasonably give rise to a future Claim covered under this Policy, and if the Insureds give written notice to the Company during the Policy Period…then any Claim which arises out of such Wrongful Act shall be deemed to have been first made at the time such written notice was received by [ACE]."

Policy Section IV.2.

28. As discussed further below, Chemonics timely notified ACE of the USAID Claim. Specifically, the parties agree that Chemonics timely noticed the referenced earlier matter involving "The Global Fund", and that the USAID Claim relates back to that prior notice and thus falls within the Policy period.

29. Chemonics has satisfied all other conditions precedent to coverage under the Policy.

**FACTS COMMON TO "THE GLOBAL FUND" MATTER AND THE USAID CLAIM**

30. Since 2016, Chemonics has provided supply chain management services to "The Global Fund" and USAID. Specifically, on behalf of both organizations, Chemonics has delivered supply chain services for HIV and malaria treatment programs on behalf of various recipients in Nigeria.

31. As part of these professional services, Chemonics managed and oversaw a network of local subcontractors for the handling of various healthcare commodities and related waste products.

32. Chemonics performed some of its services with the assistance of Zenith, a Nigerian subcontractor.

33. Zenith would deliver healthcare commodities and invoice Chemonics for those services.

34. Chemonics often processed multiple invoices from its subcontractors, including Zenith, together in a single invoice package and would then allocate those invoices between "The Global Fund" and USAID.

## "THE GLOBAL FUND" MATTER

35. In February 2020, "The Global Fund" notified Chemonics of a potential discrepancy in Zenith's program billing.

36. On March 12, 2020, Chemonics, through its broker, notified ACE of "The Global Fund" Matter.

37. On May 28, 2020, ACE provided an initial coverage position, stating that the February 2020 notice by "The Global Fund" was not a "Claim" under the Policy.

38. On October 2, 2020, "The Global Fund's" Office of the Inspector General ("**GFOIG**") asserted in a report ("**October 2020 Report**"), that Zenith inflated its charges to Chemonics and that Chemonics did not exercise adequate oversight of Zenith's invoices.

39. On October 16, 2020, Chemonics responded to "The Global Fund", stating that Chemonics conducted its own review of Zenith's billings and determined that (a) Zenith over-charged both Chemonics and "The Global Fund", (b) although Chemonics had no previous knowledge of Zenith's inflated billing practices, Chemonics failed to detect and prevent Zenith's over-charging activity, and (c) Chemonics was taking, and would continue to take, measures to mitigate the potential for future similar problems.

40. Chemonics provided ACE with the October 2020 Report and its October 16, 2020, response letter on October 22, 2020.

41. On March 9, 2021, the GFOIG issued a report confirming the substance of the October 2020 Report and recommending that "The Global Fund" recover certain expenditures from Chemonics. The March 9 GFOIG report was provided to ACE on May 3, 2021.

42. On March 25, 2021 (in a letter dated March 12, 2021), ACE denied coverage for "The Global Fund" Matter. Specifically, ACE denied that there was any coverage under the "Insuring Clause (A): Employee Theft Coverage" portion of the Policy and stated that ACE "cannot identify any other Insuring Clauses that may apply."

43. On June 10, 2021, "The Global Fund" sent a letter to Chemonics seeking reimbursement of non-compliant expenditures in the amount of $3,155,515. Chemonics forwarded the June 10, 2021, letter to ACE on June 29, 2021.

44. On July 9, 2021, Chemonics responded to "The Global Fund's" June 10, 2021, letter, discussing the possibility of payment to "The Global Fund" if and to the extent there were overpayments to Zenith. The July 9, 2021, letter was forwarded to ACE on September 22, 2021.

45. On October 12, 2021, Chemonics confirmed to "The Global Fund" that it agreed to reimburse "The Global Fund" the full amount demanded if and to the extent that there were overpayments.

46. On December 8, 2021, despite already denying coverage for "The Global Fund" Matter based on ACE's view that "The Global Fund" Matter did not trigger any coverage under the Policy, ACE sent a letter to Chemonics asserting that Chemonics breached the Consent to Settle Provisions of the Policy.

47. On February 10, 2022, Chemonics responded to ACE's December 8, 2021, letter, stating that the Consent to Settle Provisions did not bar coverage for "The Global Fund" Matter because (i) there had been no settlement with "The Global Fund", (ii) ACE had failed to take any

9

action to help Chemonics investigate and resolve "The Global Fund" Matter since learning of it at its inception and, to the contrary, ACE already had denied coverage for "The Global Fund" Matter, and (iii) ACE was not prejudiced by Chemonics' conduct in exploring a settlement with "The Global Fund" because ACE has not even articulated, much less shown, that it would have achieved a better outcome and how it would have done so.

48. On February 21, 2022, ACE disputed Chemonics' assertions made in the February 10, 2022, letter.

49. On May 11, 2022, Chemonics withdrew its claim for coverage made to ACE related to "The Global Fund" Matter because investigation revealed that, due to the fee-cap in the pertinent Chemonics-Global Fund contract, Chemonics owed the amounts sought by "The Global Fund" independent of "The Global Fund's" allegations of wrongdoing by Chemonics.

50. "The Global Fund" Matter thus involved (i) a claim made by "The Global Fund" and (not USAID, the DOJ or any other government entity); and (ii) a common law, non-statutory claim (unlike an FCA claim).

## THE USAID CLAIM

### A. ACE'S DENIAL OF COVERAGE FOR THE USAID CLAIM FROM THE OUTSET

51. In contrast, the USAID Claim (i) was made by the Government (specifically by USAID through the DOJ); and (ii) involved FCA allegations which include a unique liability and damages scheme.

52. Specifically, on July 19, 2021, the DOJ informed Chemonics that the DOJ was opening an FCA matter on behalf of USAID regarding Zenith's overbilling issue, that Chemonics

10

may be liable for treble damages and penalties, and that the government would attempt to resolve the matter through settlement with Chemonics prior to filing any litigation.

53. On September 8, 2021, Chemonics timely notified ACE of the USAID Claim by forwarding the July 2021 DOJ letter to ACE.

54. ACE agreed that the notice of the USAID Claim related back to the prior notice of "The Global Fund" Matter and thus was timely noticed within the period of the Policy.

55. Only one month later, on October 12, 2021, and without asking for any additional information, ACE sent a letter to Chemonics denying coverage for the USAID Claim based on the Government Agency Claim Exclusion – an exclusion that is so inapplicable on its face that ACE has since withdrawn that position, instead denying coverage on a wholly new ground raised for the first time in August 2023.

56. ACE relied on this exclusion even though, as noted above, the exclusion contains an exception covering claims such as the USAID Claim – namely one brought by an agency – USAID – to which Chemonics provides Professional Services.

57. Importantly, in the October 2021 letter, ACE treats the USAID Claim and "The Global Fund" Matter as two separate matters. Yet, in other correspondence ACE treats them as a single Claim. While the USAID Claim and "The Global Fund" Matter involved related facts and circumstances and are thus related for purposes of triggering Policy coverage (as ACE agrees), the USAID Claim has proceeded on a separate and independent track with separate bases for potential liability and damages from "The Global Fund" Matter and therefore must be treated as a separate Claim from "The Global Fund" Matter. Thus, any purported admissions by Chemonics in "The Global Fund" Matter are not admissions in the USAID Claim.

11

58. On May 11, 2022, Chemonics sent a letter to ACE previewing that Chemonics would dispute ACE's denial of coverage for the USAID Matter in due course.

59. On June 15, 2022, ACE responded to Chemonics' May 11, 2022, letter by "doubling-down" on its coverage denial based on a Government Agency Claim Exclusion, and also asserting that Chemonics may have breached the Consent to Settle Provisions in the Policy as to the USAID Claim.

60. On July 8, 2022, Chemonics responded to the June 15, 2022, letter, stating that (i) the Government Agency Claim Exclusion does not apply, and (ii) reminding ACE that the USAID Claim was then still in its nascent stages with no discussion of liability or damages with the DOJ and thus there was no breach of the Consent to Settle Provisions.

61. On September 23, 2022, ACE responded to Chemonics' July 8, 2022, letter and reiterated its positions.

### B. CHEMONICS' COOPERATION DESPITE ACE'S ERRONEOUS COVERAGE DENIAL

62. On September 27, 2022, Chemonics and ACE entered into an NDA regarding documents related to the USAID Claim.

63. On November 30, 2022, Chemonics began providing documents requested by ACE in the September 23, 2022, letter.

64. On January 23, 2023, ACE requested further documents and information from Chemonics.

65. In March 2023, Chemonics met with the DOJ (after providing notice to ACE that it would be doing so).

66. In April 2023, Chemonics provided additional documents to respond to ACE's supplemental requests and continued to make document productions to ACE through July 2023. In total, Chemonics produced over 45,000 pages of documents to ACE.

67. On May 30, 2023, Chemonics provided ACE notice of a planned June 2023 meeting with the DOJ related to the USAID Claim.

68. ACE requested that Chemonics postpone the meeting, stating that it needed additional time to consider any settlement proposal Chemonics intended to offer to the DOJ at that meeting.

69. On June 15, 2023, Chemonics explained that it could not reasonably postpone the meeting with the DOJ because (i) even a short postponement would create a significant risk of additional investigative action by the DOJ and corresponding incurred costs to Chemonics (and, in turn, to ACE), (ii) ACE did not need additional time to evaluate Chemonics' planned discussion with the DOJ and would not be prejudiced by Chemonics' planned settlement proposal, and (iii) asking the DOJ to defer a meeting risks prejudicing settlement negotiations.

70. On June 20, 2023, Chemonics moved forward with the meeting with the DOJ because ACE had sufficient time (almost two years) to evaluate the USAID Claim and because after ACE's October 2021 denial of the USAID Claim, Chemonics no longer had an obligation to include ACE in settlement discussions.

## ACE'S WRONGFUL DENIAL OF COVERAGE FOR CLAIMS EXPENSES ARISING OUT OF THE USAID CLAIM

71. On August 17, 2023, ACE sent a denial letter to Chemonics (the "**August 2023 Denial Letter**") (which replaced prior correspondence with respect to the USAID Claim), in which ACE (i) withdrew its earlier Government Agency Claim Exclusion defense; (ii) denied coverage for the USAID Claim based on Chemonics' purported breach of the consent-to-settle provisions

of the Policy, despite the nascent stage of the USAID Claim; and (iii) raised, for the first time, a wholly new defense that Chemonics has not incurred "Damages."

72. On August 24, 2023, Chemonics responded to the August 2023 Denial Letter by advising ACE in an email that "Chemonics will no longer engage with ACE on the defense and resolution of the USAID claim given ACE's new [and latest] coverage denial." Chemonics reminded ACE that Chemonics had made clear, since no later than July 2022, that "ACE cannot simultaneously deny coverage and expect such cooperation from Chemonics" – a principle established by case law. Chemonics concluded by noting that "ACE never withdrew its prior coverage denial based on the referenced [Government Agency Claim Exclusion] . . . until your [ACE's] letter of 8/17/23, which denies coverage on different grounds." ACE never responded to this August 24, 2023 email from Chemonics.

73. On November 7, 2023, Chemonics further responded to ACE's August 2023 Denial Letter. In that letter, Chemonics explained in detail why ACE's position was wrong both as to (i) the consent to settle issue and (ii) its assertions that Chemonics' losses are not covered "Damages" under the Policy.

74. By letter dated December 1, 2023, ACE responded by reiterating the positions in its August 2023 Denial Letter.

75. ACE has refused to pay Chemonics' Defense Costs, and has made clear that it will not pay amounts that Chemonics pays to settle the USAID Claim, namely, the Underlying Settlement Amount.

## CHEMONICS SETTLES THE USAID CLAIM

76. Effective December 19, 2024, Chemonics and the DOJ, on behalf of USAID, entered into the USAID Settlement, which settled the USAID Claim for the Underlying Settlement Amount of $3,119,582.14.[2]

77. The Underlying Settlement Amount is a small fraction of the liability exposure that the DOJ indicated Chemonics faced in the DOJ's above-referenced letter of July 19, 2021.

78. Under the USAID Settlement, Chemonics must pay the entire Underlying Settlement Amount by March 20, 2025.

79. The USAID Settlement also provides that Chemonics will be released of all claims and damages related to the USAID Claim, including the potential claims for treble damages and penalties that the DOJ referenced in its July 19, 2021 letter.

80. The USAID Settlement also provides that:

   a. The USAID Claim was based on Chemonics' alleged lack of supervision and oversight of its subcontractor Zenith, and on Chemonics' alleged corresponding failure to detect improper billing practices by Zenith;

   b. The settlement "Agreement is neither an admission of liability by Chemonics nor a concession by the United States that its claims are not well founded"; and

   c. "Chemonics denies the United States' allegations . . ."

---

[2] The USAID Settlement is a matter of public record and indeed is the subject of a DOJ press release, which contains a link to the settlement agreement. *See* https://www.justice.gov/opa/pr/chemonics-international-inc-pay-31m-resolve-allegations-fraudulent-billing-under-global.

## CHEMONICS ACCUMULATES DAMAGES DUE TO ACE'S IMPROPER COVERAGE DENIAL

81.  As of July 1, 2024, Chemonics had incurred over $7.6 million in Defense Costs in connection with the USAID Claim.

82.  Since July 1, 2024, Chemonics has incurred additional Defense Costs totaling approximately $350,000.00.

83.  As of December 19, 2024, Chemonics has become obligated to pay $3,119,582.14 to settle the USAID Claim.

84.  Thus, in total, Chemonics has incurred approximately $11 million in losses in connection with the USAID Claim.

## FIRST CAUSE OF ACTION
## FOR BREACH OF CONTRACT

85.  Chemonics incorporates by reference and restates herein the allegations of Paragraphs 1 through 84.

86.  ACE has a contractual duty to Chemonics to pay for Damages and Defense Costs incurred by Chemonics arising out of the USAID Claim.

87.  ACE has breached the terms of the Policy by failing to pay for those Defense Costs and anticipatorily denying coverage for the Underlying Settlement Amount.

88.  As a direct and proximate result of ACE's breach of contract, Chemonics has suffered loss (and will continue to suffer loss) in connection with amounts it has paid or incurred (and will pay and incur), by depriving Chemonics of the benefits of insurance coverage to which it is entitled.

**SECOND CAUSE OF ACTION**
**FOR DECLARATORY JUDGMENT WITH RESPECT TO ACE'S OBLIGATIONS IN CONNECTION WITH THE USAID CLAIM**

89. Chemonics incorporates by reference and restates herein the allegations of Paragraphs 1 through 88.

90. The Policy obligates ACE to pay for the Defense Costs and the Underlying Settlement Amount that Chemonics has paid and will pay in connection with the USAID Claim.

91. ACE has, by its words and conduct, refused or otherwise failed to perform, and indicated that it will continue to refuse or fail to perform, its obligations to Chemonics under the Policy with respect to the USAID Claim, both regarding Defense Costs and regarding the Underlying Settlement Amount.

92. An actual controversy exists among Chemonics and ACE regarding the rights of Chemonics and the obligations of ACE in connection with the payment of (i) Defense Costs arising from the USAID Claim and (ii) the Underlying Settlement Amount.

93. Pursuant to the provisions of 28 U.S.C. § 2201, Chemonics respectfully requests a declaratory judgment of Chemonics' rights and ACE's duties, and a declaratory judgment is necessary as to Chemonics' rights and ACE's duties, regarding the payment of (i) Defense Costs arising from the USAID Claim and (ii) the Underlying Settlement Amount.

**PRAYER FOR RELIEF**

WHEREFORE, CHEMONICS respectfully requests that the Court enter a judgment:

    a. With respect to the first cause of action, for damages in connection with Chemonics' past Defense Costs that ACE has refused to reimburse, in an amount to be determined at trial;

   b. With respect to the second cause of action, declaring that ACE is obligated to pay for Defense Costs arising from the USAID Claim and the Underlying Settlement Amount;

   c. For pre- and post-judgment interest at the rate specified by law; and

   d. For such other, further and different relief as this Court may deem just and proper.

            Respectfully submitted,

            POTTER ANDERSON & CORROON LLP

| OF COUNSEL: | By: */s/ Jennifer C. Wasson* |
|---|---|
|  | Jennifer C. Wasson (No. 4933) |
| Barry I. Buchman | Carla M. Jones (No. 6046) |
| Kathleen M. Repko | Hercules Plaza, 6th Floor |
| Haynes Boone, LLP | 1313 N. Market Street |
| 800 17th Street, N.W. | Wilmington, DE 19801 |
| Suite 500 | Tel: (302) 984-6000 |
| Washington, DC 20006 | jwasson@potteranderson.com |
| (202) 654-4500 | cjones@potteranderson.com |
|  | *Attorneys for Plaintiff* |
| Dated: January 10, 2025 |  |